1  Steven James Goodhue (#029288)
   Law Offices of Steven James Goodhue
2  9375 East Shea Blvd., Suite 100
   Scottsdale, AZ  85260
3  Telephone: (480) 214-9500
   Facsimile: (480) 214-9501
4  E-Mail: sjg@sjgoodlaw.com

5  *Attorney for Plaintiff*
   *AF Holdings, L.L.C.*

6

7                    **IN THE UNITED STATES DISTRICT COURT**

8                       **FOR THE DISTRICT OF ARIZONA**

9

10 AF HOLDINGS, L.L.C., a St. Kitts and Nevis        **CASE NO.:**
   limited liability company,
11
   Plaintiff,
12 v.                                                **COMPLAINT AND JURY DEMAND**

13 DAVID HARRIS,

14 Defendant.

15

16        Plaintiff AF Holdings, L.L.C. ("Plaintiff"), through its undersigned counsel, hereby files this

17 Complaint requesting damages and injunctive relief, and alleges as follows:

18                          **NATURE OF THE CASE**

19        1.      Plaintiff files this action for copyright infringement under the United States Copyright

20 Act and related contributory infringement, civil conspiracy, and negligence claims under the

21 common law to combat the willful and intentional infringement of its creative works. Defendant

22 David Harris ("Defendant") knowingly and illegally reproduced and distributed Plaintiff's

23 copyrighted Video by acting in concert with others via the BitTorrent file sharing protocol and, upon

24 information and belief, continues to do the same. In using BitTorrent, Defendant's infringement

                                    1

actions furthered the efforts of numerous others in infringing on Plaintiff's copyrighted works. The result: exponential viral infringment. Plaintiff seeks a permanent injunction, statutory or actual damages, award of costs and attorney's fees, and other relief to curb this behavior.

## THE PARTIES

2.      Plaintiff AF Holdings, L.L.C. is a limited liability company organized and existing under the laws of the Federation of St. Kitts and Nevis. Plaintiff is a holder of rights to various copyrighted works, and is the exclusive holder of the relevant rights with respect to the copyrighted creative work at issue in this Complaint.

3.      The copyrighted work at issue in this complaint is one of Plaintiff's adult entertainment videos, "Sexual Obsession" (the "Video").

4.      Defendant is an individual adult over the age of eighteen whom, upon information and belief, is currently, and at all relevant times mentioned herein, a resident of the State of Arizona.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over Plaintiff's copyright infringement claim under 17 U.S.C. §§ 101, *et seq.*, (the Copyright Act), 28 U.S.C. § 1331 (actions arising under the laws of the United States), and 28 U.S.C. § 1338(a) (actions arising under an Act of Congress relating to copyrights). This Court has supplemental jurisdiction over Plaintiff's contributory infringement, civil conspiracy and negligence claims under 28 U.S.C. § 1367(a) because they are so related to Plaintiff's copyright infringement claim, which is within this Court's original jurisdiction, that the claims form part of the same case and controversy under Article III of the United States Constitution.

6.      This Court has personal jurisdiction because, upon information and belief, Defendant either resides in or committed copyright infringement in the State of Arizona.

2

7.      Venue is properly founded in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because Defendant resides in this District, may be found in this District, or a substantial part of the events giving rise to the claims in this action occurred within this District.

**<u>BACKGROUND</u>**

8.      BitTorrent is a modern file sharing method ("protocol") used for distributing data via the Internet.

9.      Traditional file transfer protocols involve a central server, which distributes data directly to individual users. This method is prone to collapse when large numbers of users request data from the central server, in which case the server can become overburdened and the rate of data transmission can slow considerably or cease altogether. In addition, the reliability of access to the data stored on a server is largely dependent on the server's ability to continue functioning for prolonged periods of time under high resource demands.

10.      Standard P2P protocols involve a one-to-one transfer of whole files between a single uploader and single downloader. Although standard P2P protocols solve some of the issues associated with traditional file transfer protocols, these protocols still suffer from such issues as scalability. For example, when a popular file is released (e.g. an illegal copy of the latest blockbuster movie) the initial source of the file performs a one-to-one whole file transfer to a third party, who then performs similar transfers. The one-to-one whole file transfer method can significantly delay the spread of a file across the world because the initial spread is so limited.

11.      In contrast, the BitTorrent protocol is a decentralized method of distributing data. Instead of relying on a central server to distribute data directly to individual users, the BitTorrent protocol allows individual users to distribute data among themselves. Further, the BitTorrent protocol involves breaking a single large file into many small pieces, which can be transferred much more quickly than a single large file and, in turn, redistributed much more quickly than a single large

file. Moreover, each peer can download missing pieces of the file from multiple sources—often simultaneously—which causes transfers to be fast and reliable. After downloading a piece, a peer automatically becomes a source for the piece. This distribution method contrasts sharply with a one-to-one whole file transfer method.

12.     In BitTorrent vernacular, individual downloaders/distributors of a particular file are called peers. The group of peers involved in downloading/distributing a particular file is called a swarm. A server which stores a list of peers in a swarm is called a tracker. A computer program that implements the BitTorrent protocol is called a BitTorrent client. Each swarm is unique to a particular file.

13.     The BitTorrent protocol operates as follows. First, a user locates a small "torrent" file. This file contains information about the files to be shared and about the tracker, the computer that coordinates the file distribution. Second, the user loads the torrent file into a BitTorrent client, which automatically attempts to connect to the tracker listed in the torrent file. Third, the tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading data from and distributing data to the other peers in the swarm. When the download is complete, the BitTorrent client continues distributing data to other peers in the swarm until the user manually disconnects from the swarm or the BitTorrent client otherwise does the same.

14.     The degree of anonymity provided by the BitTorrent protocol is extremely low. Because the protocol is based on peers connecting to one another, a peer must broadcast identifying information (i.e. an IP address) before it can receive data. Nevertheless, the actual names of peers in a swarm are unknown, as the users are allowed to download and distribute under the cover of their IP addresses.

15.     The BitTorrent protocol is an extremely popular method for transferring data. The size of swarms for popular files can reach into the tens of thousands of unique peers. A swarm will

commonly have peers from many, if not every, state in the United States and several countries around the world. And every peer in the swarm participates in distributing the file to dozens, hundreds, or even thousands of other peers.

16.    The BitTorrent protocol is also an extremely popular method for unlawfully copying, reproducing, and distributing files in violation of the copyright laws of the United States. A broad range of copyrighted albums, audiovisual files, photographs, software, and other forms of media are available for illegal reproduction and distribution via the BitTorrent protocol.

17.    Efforts at combating BitTorrent-based copyright infringement have been stymied by BitTorrent's decentralized nature. Because there are no central servers to enjoin from unlawfully distributing copyrighted content, there is no primary target on which to focus anti-piracy efforts. Indeed, the same decentralization that makes the BitTorrent protocol an extremely robust and efficient means of transferring enormous quantities of data also acts to insulate it from anti-piracy measures. This lawsuit is Plaintiff's only practical means of combating BitTorrent-based infringement of the Video.

## ALLEGATIONS COMMON TO ALL COUNTS

18.    Plaintiff is the exclusive rights holder with respect to BitTorrent-based reproduction and distribution of the Video.

19.    The Video is currently registered in the United States Copyright Office (Copyright No. PA0001725120). (*See* Exhibit A to Complaint.) On June 12, 2011, Plaintiff received the rights to this Video pursuant to an assignment agreement, a true and correct copy of which is attached hereto as Exhibit B. (*See* Exhibit B to Complaint.)

20.    The torrent file used to access the copyrighted material was named in a manner that would have provided an ordinary individual with notice that the Video was protected by the copyright laws of the United States.

21.     Plaintiff employs proprietary peer-to-peer network forensic software to perform exhaustive real time monitoring of the BitTorrent-based swarm involved in distributing the Video. This software is effective in capturing data about the activity of peers in a swarm and their infringing conduct.

22.     Defendant, using IP address 70.176.202.3, without Plaintiff's authorization or license, intentionally downloaded a torrent file particular to Plaintiff's Video, purposefully loaded that torrent file into his BitTorrent client, entered a BitTorrent swarm particular to Plaintiff's Video, and reproduced and distributed the Video to numerous third parties.

23.     Plaintiff's investigators detected Defendant's illegal download on June 3, 2011 at 00:49:34 UTC. However, this is a simply a snapshot observation of when the IP address was *observed* in the BitTorrent swarm; the conduct itself took place before and after this date and time.

24.     Defendant was part of a group of BitTorrent users or peers in a single swarm—a process generally described above—whose computers were collectively interconnected for the sharing of a particular unique file.  The particular file a BitTorrent swarm is associated with has a unique file "hash"—i.e. a unique file identifier generated by an algorithm.  As is common, there was a unique hash value in this case (hereinafter referred to simply as "Hash Tag."), and common to all of the participants in the swarm.

**FIRST CLAIM FOR RELIEF**
**COPYRIGHT INFRINGEMENT – REPRODUCTION**
**(17 U.S.C. § 106(1))**

25.     Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth fully herein.

26.     Plaintiff is the copyright owner of the Video.

27.     Defendant, without authorization, unlawfully obtained a copy of the Video.

6

1    28.    Normally, Plaintiff offers the Video for purchase.    Defendant, however, did not

2    purchase the Video and/or obtain the Video legally.

3    29.    Defendant used IP address 70.176.202.3 to access the Video on the Internet, and

4    download the unique file containing the Video onto a hard drive through the unique swarm

5    associated with the unique Hash Tag using the BitTorrent protocol.

6    30.    Defendant's actions constituted copyright infringement of Plaintiff's Video.

7    31.    Defendant knew or had constructive knowledge that his acts constituted copyright

8    infringement of Plaintiff's Video.

9    32.    Defendant's conduct was willful within the meaning of the Copyright Act:

10   intentional, and with indifference to the Plaintiff's rights.

11   33.    Defendant's conduct infringed upon Plaintiff's exclusive rights of reproduction of the

12   Video that are protected under the Copyright Act.

13   34.    Plaintiff has been damaged by Defendant's conduct, including but not limited to

14   economic and reputation losses. Plaintiff continues to be damaged by such conduct, and has no

15   adequate remedy at law to compensate the Plaintiff for all of the possible damages stemming from

16   the Defendant's conduct.

17   35.    As Defendant's infringement was intentional and willful, the Plaintiff is entitled to an

18   award of actual damages and/or statutory damages (pursuant to 17 U.S.C. § 504(c)) at its own

19   election, exemplary damages, attorneys' fees (pursuant to 17 U.S.C. § 505), injunctive relief

20   (pursuant to 17 U.S.C. §§ 502, 503) and the costs of the suit.

21   **SECOND CLAIM FOR RELIEF**
     **COPYRIGHT INFRINGEMENT – DISTRIBUTION**

22   **(17 U.S.C. § 106(3))**

23   36.    Plaintiff hereby incorporates by reference each and every allegation contained in the

24   preceding paragraphs as if fully set forth fully herein.

37.    Plaintiff holds the exclusive rights under the Copyright Act to distribute the Video.

38.    Defendant has used, and continues to use, the BitTorrent file transfer protocol to unlawfully distribute the Video to other individuals over the Internet by publishing the Video to hundreds of thousands of BitTorrent users from a computer owned or controlled by Defendant, which, in essence, served as a distribution server for the Video.  In doing so, Defendant violated Plaintiff's exclusive rights to distribute the Video.

39.    Defendant was not given any permission to conduct such reproduction, and Plaintiff never consented to such.

40.    Defendant's actions constitute infringement of Plaintiff's copyrights and exclusive rights under the Copyright Act.

41.    Defendant knew or had constructive knowledge that his acts constituted copyright infringement of Plaintiff's Video.

42.    Defendant's conduct was willful within the meaning of the Copyright Act: intentional, and with indifference to the Plaintiff's rights.

43.    Plaintiff has been damaged by Defendant's conduct, including but not limited to economic and reputation losses. Plaintiff continues to be damaged by such conduct, and has no adequate remedy at law to compensate the Plaintiff for all of the possible damages stemming from the Defendant's conduct.

44.    As Defendant's infringement was intentional and willful, the Plaintiff is entitled to an award of actual damages and/or statutory damages (pursuant to 17 U.S.C. § 504(c)) at its own election, exemplary damages, attorneys' fees (pursuant to 17 U.S.C. § 505), injunctive relief (pursuant to 17 U.S.C. §§ 502, 503) and the costs of the suit.

## THIRD CLAIM FOR RELIEF
## CONTRIBUTORY INFRINGEMENT

45.     Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth fully herein.

46.     When users in this unique swarm all possess the same infringing work with the same exact hash value, it is because each infringer possesses an exact digital copy, containing the exact bits and pieces unique to that specific file of Plaintiff's original copyrighted work.  They only way this happens in a BitTorrent swarm is through the sharing of these bits and pieces of each same unique file, with the same unique hash value, between the users in the swarm.  In essence, although hundreds of users may be uploading the copyrighted work, a single user will receive only the exact parts of a singular upload through that exact swarm, not a compilation of available pieces from various uploads.

47.     Defendant published the Hash Tag to the BitTorrent network.

48.     Defendant downloaded, uploaded and distributed the Video to other BitTorrent users through use of the hash-specified protocol in the unique swarm.

49.     As each of the thousands of people who illegally downloaded the movie accessed this illegal publication, they derived portions of their illegal replication of the file from multiple persons, including, but not limited to, Defendant.

50.     Defendant knew of the infringement, was conscious of his own infringement, and Defendant was fully conscious that his actions resulted in multiple other persons derivatively downloading the file containing Plaintiff's Video.

51.     The infringement by the other BitTorrent users could not have occurred without Defendant's participation in uploading Plaintiff's copyrighted works.   As such, Defendant's

participation in the infringing activities of others is substantial and contributed, for profit, to the infringing activity of thousands of other peers over the Internet across the world.

52.     Defendant profited from this contributory infringement by way of being granted access to a greater library of other infringing works, some of which belonged to Plaintiff and some of which belonged to other copyright owners.

**FOURTH CLAIM FOR RELIEF**
**CIVIL CONSPIRACY**

53.     Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth fully herein.

54.     In using the peer-to-peer BitTorrent file distribution method, Defendant engaged in a concerted action with other unnamed individuals to reproduce and distribute Plaintiff's Video by exchanging pieces of the Video file in the torrent swarm.

55.     Defendant and his co-conspirators downloaded a torrent file, opened it using a BitTorrent client, and then entered a torrent swarm comprised of other individuals distributing and reproducing Plaintiff's Video. In participating in said conspiratorial network, Defendant agreed with others to engage in a concerted tortious action in the network to reproduce and distribute Plaintiff's Video.

56.     Participants in the torrent swarm have conspired to provide other individuals with pieces of the Video in exchange for receiving other pieces of the same Video to eventually obtain a complete copy of the file.

57.     In furtherance of this civil conspiracy, Defendant committed overt tortious and unlawful acts by using BitTorrent software to download the Video from and distribute it to others, and were willful participants in this joint activity.

58.    As a proximate result of this conspiracy, Plaintiff has been damaged, as is more fully alleged above.

## **FIFTH CLAIM FOR RELIEF**
## **NEGLIGENCE**

59.    Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth fully herein.

60.    In the alternative, Defendant was negligent and/or reckless in allowing a third-party to commit the allegations of infringement, contributory infringement, and civil conspiracy described above through his Internet connection.

61.    Defendant accessed, or controlled access to, the Internet connection used in performing the unauthorized copying and sharing of Plaintiff's Video, proximately causing financial harm to Plaintiff.

62.    Defendant had a duty to secure his Internet connection.  Defendant breached that duty by failing to secure his Internet connection.

63.    Reasonable Internet users take steps to secure their Internet access accounts preventing the use of such accounts for an illegal purpose.  Defendant's failure to secure his Internet access account, thereby allowing for its illegal use, constitutes a breach of the ordinary care that a reasonable Internet account holder would do under like circumstances.

64.    In the alternative, Defendant secured his connection, but permitted an unknown third party to use his Internet connection to infringe on Plaintiff's Video.  Defendant knew, or should have known, that this unidentified individual used Defendant's Internet connection for the aforementioned illegal activities.  Defendant declined to monitor the unidentified third-party infringer's use of his computer Internet connection, demonstrating further negligence.

11

65.    In the alternative, Defendant knew of, and allowed for, the unidentified third party infringer's use of his Internet connection for illegal purposes and thus was complicit in the unidentified third party's actions.

66.    Upon information and belief, Defendant's failure to secure his Internet access account directly allowed for the copying and sharing of Plaintiff's Video over the BitTorrent protocol through Defendant's Internet connection, and interfered with Plaintiff's exclusive rights in the copyrighted work.

67.    Upon information and belief, Defendant knew, or should have known of, the unidentified third party's infringing actions, and, despite this, Defendant directly, or indirectly, allowed for the copying and sharing of Plaintiff's Video over the BitTorrent protocol through Defendant's Internet connection, and interfered with Plaintiff's exclusive rights in the copyrighted Video.

68.    By virtue of his unsecured access, Defendant negligently allowed the use of his Internet access account to perform the above-described copying and sharing of Plaintiff's copyrighted Video.

69.    Had Defendant taken reasonable care in securing access to this Internet connection, or monitoring the unidentified third-party individual's use of his Internet connection, such infringements as those described above would not have occurred by the use of Defendant's Internet access account.

70.    Defendant's negligent actions allow others to unlawfully copy and share Plaintiff's copyrighted Video, proximately causing financial harm to Plaintiff and unlawfully interfering with Plaintiff's exclusive rights in the Video.

## **JURY DEMAND**

71.    Plaintiff hereby demands a jury trial in this case.

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests Judgment and relief as follows:

a.      Judgment against Defendant that he has: a) willfully infringed Plaintiff's rights in federally registered copyrights pursuant to 17 U.S.C. § 501; and b) otherwise injured the business reputation and business of Plaintiff by Defendant's acts and conduct set forth in this Complaint;

b.      Judgment in favor of the Plaintiff against Defendant for actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of Plaintiff, in an amount to be ascertained at trial;

c.      Order of impoundment under 17 U.S.C. §§ 503 & 509(a) impounding all infringing copies of Plaintiff's audiovisual works, photographs or other materials, which are in Defendant's possession or under his control;

d.      On Count III, an order that Defendant is jointly and severally liable to the Plaintiff in the full amount of Judgment on the basis of a common law claim for contributory infringement of copyright; for an award of compensatory damages in favor of the Plaintiff and against Defendant, jointly and severally, in an amount to be determined at trial;

e.      As to Count IV, that the Court order the Defendant jointly and severally liable to Plaintiff in the full amount of the Judgment along with the damages associated with the infringing activities of his co-conspirators;

f.      On Count IV, in the alternative, an order that Defendant is jointly and severally liable to the Plaintiff in the full amount of Judgment on the basis of Defendant's negligence in allowing an unidentified third party access his Internet account and, through it, violate Plaintiff's copyrighted works; for an award of compensatory damages in favor of the Plaintiff and against Defendant, jointly and severally, in an amount to be determined at trial;

g.      Judgment in favor of Plaintiff against the Defendant awarding the Plaintiff attorneys' fees, litigation expenses (including fees and costs of expert witnesses), and other costs of this action; and

1   h.      Judgment in favor of the Plaintiff against Defendant, awarding Plaintiff declaratory and

2   injunctive or other equitable relief as may be just and warranted under the circumstances.

3   Dated this 8th day of October, 2012

4                                              Law Offices of Steven James Goodhue

5

6                                    By:  /s/ Steven James Goodhue_____
                                         Steven James Goodhue (#029288)
7                                        9375 East Shea Blvd., Suite 100
                                         Scottsdale, AZ  85260
8                                        *Attorney for Plaintiff*
                                         *AF Holdings, L.L.C.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24