Paul D. Ticen (AZ Bar # 024788)
**Kelley / Warner, P.L.L.C.**
8283 N. Hayden Rd., #229
Scottsdale, Arizona 85258
Tel: 480-331-9397
Dir Tel: 480-636-8150
Fax: 480-907-1235
Email: paul@kellywarnerlaw.com

Attorney for Non-Party Subpoena Targets

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AF HOLDINGS, L.L.C., a St. Kitts and Nevis limited liability company, | Case No.: 2:12-cv-02144-PHX – GMS |
| Plaintiff, | **NON-PARTIES' MOTION FOR ATTORNEYS' FEES** |
| v. | |
| DAVID HARRIS, | |
| Defendant. | |

Non-parties, who are identified by IP Address Nos. 72.223.91.187, 68.230.120.162, 68.106.45.9, 68.2.87.48, 98.165.107.179 and 68.2.92.187 and targeted through a subpoena duces tecum issued in connection with this matter, hereby move for attorneys' fees incurred in seeking to quash the subpoena and otherwise objecting to and asserting rights related to the subpoena, which was among the issues raised by the Court in its order to show cause. The non-parties are both eligible and entitled to incurred attorneys' fees pursuant to Rules 45(c)(1), 26(g)(1)(B), Fed. R.Civ. P., and relevant case law based on a bad faith issuance of the subpoena. **The total amount of incurred attorneys' fees being requested is $16,075**. This includes $13,050 incurred through July 20, 2013 and $3,025 incurred in preparing this motion. Undersigned counsel tried

**Kelly / Warner, PLLC.**
404 S. Mill Ave., Suite C-201
Tempe, AZ 85281
Telephone: (480) 331-9397

to resolve informally by discussing the attorneys' fees issue with Mr. Goodhue following July 19th's Order to Show Cause Hearing and in a follow-up e-mail.  (See Statement of Consultation attached as **Exhibit A** hereto).  This motion is supported by the non-parties previous filings in this case, the entire record and the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**A.    Eligibility**

The non-parties are eligible to recover attorneys' fees under Rules 45(c)(1) and 26(g)(1)(B) because Plaintiff issued a subpoena to ascertain protected information - their identity - in bad faith.  A non-party may recover attorneys' fees pursuant to the above if (1) an oppressive subpoena imposes an undue burden, (2) the subpoena is facially defective or (3) the requesting party issued the subpoena in bad faith.  *Mount Hope v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012).  And the non-parties have a protected interest in their personal information and keeping their identity confidential.  See *West Coast Prod.., Inc. v. Does 1-5829*, 275 F.R.., 9, 13-14 (D.D.C. 2011) (internet subscribers right to remain anonymous balanced against plaintiff's need for the information to prosecute its copyright infringement claim).

On October 9, 2012, Plaintiff commenced this lawsuit against Mr. Harris for alleged copyright infringement of the work "Sexual Obsession" that purportedly occurred on or about June 3, 2011.  (Doc. 1 at ¶ 23).  At that time, Plaintiff asserted allegations that Mr. Harris was among BitTorrent users or peers participating in a single swarm, and asserted claims for contributory infringement and civil conspiracy.  (*Id.* at ¶¶ 24, 45-58).  Indeed Plaintiff conspiracy allegations are shrouded in past tense language. (*Id.* at 53-58).  And notably this case spawned from a July 13, 2011 lawsuit brought by Plaintiff against over one-thousand putative John Doe defendants whom were identified by IP address, which Mr. Harris' assigned IP address was among.  (*AF Holdings, LLC v. Does 1-1140*), 1:11-cv-01274, Doc. 1 and exhibit A thereto (D.D.C. 2011).  Based on the undeniable connection between the two cases and past-tense language, the only

**Kelly / Warner, PLLC.**
404 S. Mill Ave., Suite C-201
Tempe, AZ 85281
Telephone: (480) 331-9397

**Kelly / Warner, PLLC.**
404 S. Mill Ave., Suite C-201
Tempe, AZ 85281
Telephone: (480) 331-9397

logical inference is that Mr. Harris' purported co-conspirators in this case refer to those putative John Doe defendants in the D.C. action.

Nevertheless, on February 5, 2013, Plaintiff issued the subject subpoena directed at Internet Service Providers, such as Cox Communication. (See 44-1). The subpoena directed Cox to produce contact information, including name, address, telephone numbers and e-mail addresses, of persons assigned one of the 71 IP addresses being targeted (*Id*.). Plaintiff's undeniable purpose in issuing the subpoena was to identity Mr. Harris' purported co-conspirators (See Doc. 39). Significantly, all but two of the 71 IP addresses were purportedly observed to infringe after Plaintiff filed the complaint in this case. (*Id*.). And the overwhelming majority were purportedly observed more than a month after the complaint was filed. (*Id*.). Indeed the purported infringing activity that occurred on networks with the IP addresses assigned to the non-party movants ranged from November 16, 2012 to February 1, 2013. (See Doc 49-1).

On March 25, 2013, the non-parties moved for an order staying litigation, quashing Plaintiff's subpoena and for entry of a protective order. (Doc 44). On May 17, 2013, the Court scheduled an order to show cause for June 7, 2013. (Doc. 51). After granting a requested continuance, the Court rescheduled the OSC hearing and supplemented its questions that Plaintiff would be required to address at the hearing. (Doc 71). This included questions directed specifically at the subpoena targeting the non-parties. (*Id*. at ¶¶ 6 and 7). On July 19, 2013, the Court entered an order quashing the subpoena.

## B.   <u>Entitlement</u>

The non-parties incurred attorneys fees to stave off Plaintiff's bad faith attempt to ascertain their personal contact information and to stave off the unpleasant experience of Plaintiff's coercive copyright settlement and litigation strategy.  Plaintiff issued the subpoena in bad faith based on the following three intertwined reasons: (1) deception, (2) the conspiracy claim is facially implausible; and (3) lack of evidence. And Plaintiff's bad faith is underscored by its clear ulterior purpose in issuing the subpoena, namely, to

coerce settlements from those targeted.

A civil conspiracy claim requires specific facts showing an agreement and concerted action.  *Wasco Products v. Southwall Technologies, Inc*, 435 F.3d 989, 992 (9th Cir. 2006);  *Allen v. Quest Online, LLC*, CV-11-138-PHX-GMS, 2011 WL 4403674 * 9 (D. Ariz. 2011).  And the concerted action is done in furtherance of the agreement. *Wasco Products*, 435 F.3d at 992.  Plaintiff issued the subpoena to identify Mr. Harris' purported co-conspirators.  (Doc. 39 at 1:17-18, 2:3-4).  And to establish Mr. Harris' joint and several liability for Plaintiff's contributory infringement and civil conspiracy claims.  (*Id*. at 2:10-13).

As noted above, Plaintiff's contributory infringement and civil conspiracy claims were pled in the past tense.  The only logical and reasonable inference that can be drawn, is the subpoena targets allegedly infringed on Plaintiff's work in or around the June 2011 time-frame.  Instead, the dates and times attached to the subpoena show that sixty-nine of the seventy-one subpoena targets had not even allegedly downloaded/uploaded  on the date Plaintiff filed this complaint.  Further, Plaintiff readily glossed over the dates because it makes the conspiracy claim implausible. Plaintiff cannot establish an agreement between Mr. Harris and the 71 subpoena targets. It can't argue the agreement was in place back in June 2011, because Plaintiff already identified Mr. Harris' purported co-conspirators as the thousand plus putative John Does in the D.C. action.  Further, by asserting allegations and claims for civil conspiracy against Mr. Harris, Plaintiff certified it had a good faith belief that an agreement and concerted action in furtherance of the agreement had occurred as of October 9, 2012. Therefore, it's implausible that the non-parties, who hadn't even yet allegedly infringed, were somehow Mr. Harris' purported co-conspirators as of October 9, 2012. Furthermore, there's been no evidence, let alone specific factual allegations, that Mr. Harris had an agreement with the non-parties or the other 71 subpoena targets concerning future infringing activity.

Plaintiff's efforts in issuing this subpoena was deceptive because it used the cover

**Kelly / Warner, PLLC.**
404 S. Mill Ave., Suite C-201
Tempe, AZ 85281
Telephone: (480) 331-9397

of flushing out evidence supporting the conspiracy claims to satisfy Rule 26(g)(1)(B), while glossing over key facts (i.e. dates of purported infringement) that would render such a conspiracy claim factually implausible.  And why was this done?  This was part of Plaintiff and Prenda Law's well documented business model to squeeze the non-parties and other subpoena targets for settlement dollars.  There is no other logical explanation for Plaintiff to go through the expense of the subpoena unless there was financial upside, because surely, Plaintiff's conspiracy claims would fail the instant it tried to present evidence that the non-parties and the others targeted were Mr. Harris' co-conspirators.  The bad faith is readily apparent in issuing the subpoena under the auspices of attempting to identify Mr. Harris' purported co-conspirators.  But the bad faith is indisputable and indefensible because of the clear ulterior purpose for its issuance.

Pursuant to LRCiv. 54.2(c)(2), the non-parties are entitled to include attorneys' fees incurred in preparing the fees application for purposes of the Court determining a reasonable fee.   Time spent preparing the fees application "must be included in calculating a reasonable fee because uncompensated time spent on petitioning for a fee automatically diminishes the value of the fee eventually received." *Anderson v. Director, Office of Workers Compensation Programs*, 91 F.3d 1322, 1325 (9th Cir.1996); *Smith v. Barrow Neurological Inst*., CV 10-01632-PHX-FJM, 2013 WL 2369915 (D. Ariz. May 29, 2013).

**C**.     **Reasonableness of Requested Award**

The Lodestar method determines what are reasonable attorneys' fees under the Copyright Act and for purposes of a sanctions award under Rule 45(c)(1).  *Nintendo of Am., Inc. v. NTDEC*, 822 F. Supp. 1462, 1466 (D. Ariz. 1993), aff'd, 51 F.3d 281 (9th Cir. 1995); *In re NCAA Student-Athlete Name & Likeness Licensing Litig*., 2012 WL 4846522 * 2 (N.D. Cal. 2012).  In calculating attorneys' fees pursuant to the Lodestar method, the amount awarded is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Nintendo of Am*., 822 F. Supp. at

**Kelly / Warner, PLLC.**
404 S. Mill Ave., Suite C-201
Tempe, AZ 85281
Telephone: (480) 331-9397

**Kelly / Warner, PLLC.**
404 S. Mill Ave., Suite C-201
Tempe, AZ 85281
Telephone: (480) 331-9397

1466.  Factors supporting an adjustment of the lodestar are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 1996), *Skydive Arizona, Inc. v. Quattrocchi*, 2011 WL 1004945 * 5 (D. Ariz. 2011).

The non-parties signed an engagement letter wherein they individually, as well as jointly and severally, agreed to pay undersigned counsel's hourly rate of $250 per hour. (See **Exhibit B**[1]).  However, the agreement stated that the non-parties were no obligated to pay attorneys' fees beyond 20 hours, and a subsequent agreement was reached that fees beyond 20 hours were contingent on a successful outcome and an award in their favor on the finding of bad faith.  The subsequent agreements were in place to cap immediate costs given that they are consumers of limited means and uncertainty what motion practice and hearings would follow the non-parties requested relief.  And regardless of the agreement, under the lodestar method, it is permissible to request more than what was actually billed for.  See *Yahoo!, Inc. v. Net Games, Inc*., 329 F. Supp. 2d 1179, 113 (N.D. Cal. 2004) (the fee award is that charged by reasonably competent counsel, not the fee due under the particular agreement between the fee applicant and lawyer; See *AF Holdings v. Navasca*, 3:12-cv-02396, Doc 100).

Per the lodestar method, the reasonableness of the hourly rate is determined by the market rate of the community in which the action is pending and for similar services of lawyers' of reasonably comparable skill, experience and reputation.  *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005),  *Mendenhall v. NTSB*, 213 F.3d 464, 471 (9th Cir. 2000), *Skydive Arizona,* 2011 WL 1004945 at * 2.  The hourly rate of $250 is reasonable

---

[1] The fee agreement produced has the names of the parties redacted and without signatures to protect anonymity.

**Kelly / Warner, PLLC.**
404 S. Mill Ave., Suite C-201
Tempe, AZ 85281
Telephone: (480) 331-9397

under the lodestar standard because it is in line with the median hourly rate in Arizona, below the median hourly rate of intellectual property lawyers, and undersigned counsel has developed a niche practice in the area of BitTorrent copyright litigation over the past 2-3 years.  (See Declaration of Paul D. Ticen attached as **Exhibit C).**  The State Bar of Arizona, Economic of Law Practice in Arizona, recently published a 2013 edition available for purchase, with a summary to be published in the September 2013 issue of Arizona Attorney Magazine.  (See **Exhibit  D**).  The median billing rate is $255.  (*Id*.).  And in 2010 the median billing rate was $250.  (See *Skydive Arizona v. Quattrocchi*, 2:05-cv-02656, Doc. 481-1 at Pg. 10).  Therefore, the hourly rate is right at the median, without consideration that intellectual property and copyright litigation commands a higher hourly rate.  The median billing rate for intellectual property lawyers in 2007 was $268 per hour.  (*Id*.).  Since median hourly rates have increased from 2010 to 2013, median hourly rates for intellectual property have most likely increased as well.  Therefore, the hourly rate of $250 per hour is right in line with the community standards of Arizona and an intellectual property practice area.

Further, the novelty and complexity of issues, quality of representation and results obtained, are additional factors that play into a reasonable fee calculation. *Skydive Arizona*, 2011 WL 1004945 at * 4.  The proliferation of BitTorrent litigation in federal courts has inherently created novel and complex issues given the disconnect between the Copyright Act and modern technology.  And Prenda Law, the Prenda Law principals and its clients have created a factual maze, layers upon layers of inconsistencies, litigation battles throughout the country and adverse factual findings. Therefore, both an understanding of copyright law and an understanding and appreciate for the factual nuances is required.  Further, non-party intervention in this type of litigation is relatively uncommon, and the requested relief even more so given the highly extraordinary facts and circumstances that spawned from the *Ingenuity 13* case in the Central District of California and the allegations of identity theft raised in the Minnesota Alan Cooper action.  Last, had Plaintiff and Prenda Law obtained contact information

for the subpoena targets, the opportunity to coerce settlements of more than $200,000 existed (71 account holders at an average settlement of $3,000).[2]   The totality of these additional factors reinforce that an hourly rate of $250.00 is reasonable.

**D**.   **Reasonable Hours Spent**

A court may reduce hours in making a reasonableness determination if excessive time is spent, duplicative work or evidence of block billing.   *Moreno v. City of Sacramento*, 534 F.3d 1106, 1113 (9th Cir. 2008); *Welch v. Metro Life Ins. Co*, 480 F.3d 942, 948 (9th Cir. 2007); *Skydive Arizona*, 2011 WL 1004945 at * 4.   A snapshot of hours spent by undersigned counsel's for particular tasks include the following:

(1)   Motion for Stay, Quash and Entry of Protective Order – 22.4 hours;

(2)   Reply in Support of Motion and Motion to Strike Plaintiff's Untimely Response – 10.3 hours;

(3)   Preparation of Motion for Leave to File Response and Preparation of Response – 6.1 hours;

(4)   Preparation of Objection to John Steele's Affidavit and Preparation For June 7th OSC Hearing – 7.9 hours; and

(5)   Preparation and Attending OSC Hearing – 3.3 hours.

(See **Exhibit E** for a more detailed breakdown of time within these particular tasks). These hours comprise 50 of the 52.2 hours billed by undersigned counsel during the course of representing the non-parties.  And the 52.2 hours do not include a consultation meeting that lasted approximately 2 hours with the non-parties to go over their options. The lion's share of the time was spent on the initial motion, which included a detailed factual background involving Plaintiff's formation, copyright infringement litigation campaign and the issues brewing in the *Ingenuity 13* case in the Central District of California that directly impacted this particular case.  The detailed factual background was needed to establish the highly extraordinary circumstances for why the non-parties

---

[2] http://www.forbes.com/sites/kashmirhill/2012/10/15/how-porn-copyright-lawyer-john-steele-justifies-his-pursuit-of-sometimes-innocent-porn-pirates/

Kelly / Warner, PLLC.
404 S. Mill Ave., Suite C-201
Tempe, AZ 85281
Telephone: (480) 331-9397

made the sweeping relief requested.  And in explaining why the relief requested was needed to prevent the non-parties from being coerced by Prenda into paying thousands of dollars.  All of the hours were spent toward this ultimate objective.

**E.**  **John Steele, Paul Hansmeier and Paul Duffy Should Be Jointly and Severally Liable to Pay the Award of Attorneys Fees**

Plaintiff is a shell company formed in a known tax haven.  (See Doc 44 at Pgs. 3 and 4).  John Steele, Paul Hansmeier and Paul Duffy, found by Judge Wright to be Plaintiff's de facto owners, formulated and executed the abusive copyright infringement settlement and litigation strategy.  *Ingenuity 13, LLC v. John Doe*, C.D. Cal., 2:12-cv-08333, Doc No. 130).  In October 2012, this included over 25 separate cases filed in the District of Arizona.  (See screenshot from www.wefightpiracy.com, attached as Exhibit F hereto).  The evidence in this case, and in other cases, is consistent with these individuals controlling the litigation strategy, making decisions and directing others to execute the strategy.  Mr. Goodhue, in his bench memorandum, answered the Court's question in who he took direction from.  His answer was Brett Gibbs and Paul Duffy, and recently Mark Lutz (See Doc 86 at Pg. 10).  And notably Brett Gibbs testified under oath on March 16, 2012, and has filed three separate declarations, including two in AF Holdings related litigation, that he took direction from John Steele and Paul Hansmeier.  (See Brett Gibbs' Declarations attached as Exhibit F hereto; Doc 44 at Pgs. 8:23-9:11).  And this is also consistent with undersigned counsel's observations and experience.  (See Doc 44-5).  The only reasonable inference that can be drawn is these individuals, as part of the overall litigation strategy, directed and ordered Mr. Goodhue to issue this subpoena.

"An officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf."  *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985*); Lemon v. Harlem Globetrotters Int'l*, Inc., 437 F. Supp. 2d 1089, 1110 (D. Ariz. 2006).  And "[w]hen parties act in concert, it

**Kelly / Warner, PLLC.**
404 S. Mill Ave., Suite C-201
Tempe, AZ 85281
Telephone: (480) 331-9397

**Kelly / Warner, PLLC.**
404 S. Mill Ave., Suite C-201
Tempe, AZ 85281
Telephone: (480) 331-9397

is well settled that each should be held responsible for all of the actions of the other because each either intends or can foresee how the actions of each will combine to cause the harm." *Bunker Hill & Sullivan Mining & Concentrating Co., et al. v. Polak*, 7 F.2d 583 (9th Cir.) *Church v. Rawson Drug & Sundry Co*., 173 Ariz. 342, 351, 842 P.2d 1355, 1364 (Ct. App. 1992); A.R.S. § 12-2506.

The lines between Plaintiff and Prenda Law[3] are blurred.  Judge Wright found these three individuals are the de facto owner of Plaintiff.  *Ingenuity 13, LLC v. John Doe.* Doc 130).  Mark Lutz, as the purported CEO or manager, and that Plaintiff is owned by a Trust is of recent fiction beginning with Paul Hansmeier's 30(b)(6) deposition and rebutted by Brett Gibbs' declarations.  (See Declarations of Brett Gibbs attached as **Exhibit G** hereto; See also Doc 44 at pgs. 3:21-4:24; 9:22-10:11).  There are sufficient facts supporting a finding, based on a reasonable inferences that can be drawn, that these three individuals acted in concert by directing Mr. Goodhue to issue this subpoena.  Accordingly, they should be jointly and severally liable to pay an award of attorneys fees' in favor of the non-parties and against Plaintiff.

RESPECTFULLY submitted this 2nd day of August, 2013.

**KELLY / WARNER, PLLC**

By      /s/ Paul D. Ticen
         Paul D. Ticen
         8283 N. Hayden Rd., #229
         Scottsdale, Arizona 85258
         Attorney for Non-Party Subpoena Targets

---

[3] Notably Prenda Law, Inc. was voluntarily dissolved on July 26, 2013.  See **Exhibit H** hereto.

**Kelly / Warner, PLLC.**
404 S. Mill Ave., Suite C-201
Tempe, AZ 85281
Telephone: (480) 331-9397

## CERTIFICATE OF FILING AND SERVICE

Pursuant to the Case Management/Electronic Case Filing Administrative Policies and Procedures Manual ("CM/ECF Manual") of the United States District Court for the District of Arizona, I hereby certify that on August 2, 2013, I electronically filed:

### NON-PARTIES' MOTION FOR ATTORNEYS' FEES

with the U.S. District Court clerk's office using the ECF system, which will send notification of such filing to the assigned Judge and to the following counsel of record:

> Steven James Goodhue
> Law Offices of Steven James Goodhue
> 9375 East Shea Blvd., Suite 100
> Scottsdale, Arizona 85260
> E-Mail: sjg@sjgoodlaw.com
> Attorney for Plaintiff
>
> David Harris
> 4632 East Caballero Street, #1
> Mesa, Arizona 85205
> E-Mail: (troll.assassins@cyber-wizards.com)


**KELLY / WARNER, PLLC**

By   /s/ Paul D. Ticen
    Paul D. Ticen
    8283 N. Hayden Road, #229
    Scottsdale, Arizona 85258
    Attorney for Non-Party Subpoena Targets

11