Steven James Goodhue (#029288)
Law Offices of Steven James Goodhue
9375 East Shea Blvd., Suite 100
Scottsdale, AZ  85260
Telephone: (480) 214-9500
Facsimile: (480) 214-9501
E-Mail: sjg@sjgoodlaw.com

*Attorney for Plaintiff*
*AF Holdings, L.L.C.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AF HOLDINGS, L.L.C., a St. Kitts and Nevis limited liability company,<br><br>Plaintiff,<br>v.<br><br>DAVID HARRIS,<br><br>Defendant. | **CASE NO.: 2:12-CV-02144-PHX-GMS**<br><br><br>**PLAINTIFF'S RESPONSE TO NON-PARTIES MOTION FOR ATTORNEYS FEES** |

Plaintiff AF Holdings, L.L.C. ("Plaintiff"), through its undersigned counsel, hereby submits its Response to Non-Parties Motion for Attorneys' Fees as detailed below.

## INTRODUCTION

On August 2, 2013, certain individual(s) identified by IP addresses, 72.223.91.187, 68.230.120162, 68.106.45.9, 68.2.87.48, 98.165.107.179 and 68.2.92.187 (hereinafter, "Movant") filed a motion for attorneys' fees. (ECF No. 88.)  The motion seeks an attorneys' fees award of $16,075—$3,025 of which was incurred in preparing the motion.  (See id.)  The motion should be denied for the reasons stated herein.

1

1

## <u>DISCUSSION</u>

2

**I.    Only Subpoena Recipients May Recover Reasonable Attorney's Fees Under Federal Rule of Civil Procedure 45**

3

4          A threshold issue is whether Movant is eligible to recover his attorney's fees for adjudicating

5    his so-called[1], "protected interest in his personal information." (ECF No. 88 at 2.)  Movant claims

6    eligibility under Rules 45(c)(1) and 26(g)(1)(B) [2] because, "Plaintiff issued a subpoena to ascertain

7    their protected information – their identity – in bad faith." (*See id.*)  Federal Rule of Civil Procedure

8    45(c)(1) provides:

9              *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney
               responsible for issuing and serving a subpoena must take reasonable
10             steps to avoid imposing undue burden or expense on a *person subject
               to the subpoena*. The issuing court must enforce this duty and impose
11             an appropriate sanction—which may include lost earnings and
               reasonable attorney's fees—on a party or attorney who fails to comply.

12   Fed. R. Civ. P. 45 (emphasis added).   The subpoena Movant complains of was issued to Cox

13   Communications, not Movant.  (*See* ECF No. 88 at 3.)  Yet, "the plain language of [Rule 45(c)(1)]

14   suggests that sanctions may be imposed when a subpoenaing attorney unfairly harms a *subpoena

15   recipient* by acting carelessly or in bad faith while issuing and serving a subpoena." *Mount Hope

16   Church v. BASH BACK!*, 705 F.3d 418, 425 (9th Cir. 2012) (emphasis added).  Movant was not a

17   subpoena recipient, and thus is not eligible to recover fees under Rule 45(c)(1)—and, by

18   extension, Rule 26(g).

19          Movant attempts to carve out an exception to this general rule, arguing, "the non-parties have

20   a protected interest in their personal information and keeping their identity confidential."  (ECF No.

21   _____

22   [1] Despite Movant's protestations, "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979).

23   [2] The relationship between Rule 26(g) and Rule 45(c)(1) is that "Rule 45(c)(1) gives 'specific application' to Rule 26(g)." *See Mount Hope Church v. BASH BACK!*, 705 F.3d 418, 425 (9th Cir. 2012). According to the Ninth Circuit, "[A] violation of any one of the Rule 26 duties will be relevant to assessing propriety [sic] of sanctions under Rule
24   45(c)(1)'s 'undue burden' language." *Id.* In other words, Rule 26(g) informs the meaning of "undue burden" under Rule 45, but does not expand the scope of persons who are eligible for Rule 45 sanctions.

88 at 2.)  However, the Ninth Circuit has stated that Rule 26(g) duties, including, "acting consistent with existing law or with good reason to change it and absent bad faith, relate to the subpoena process and *not to the adjudication of related follow-on issues*, such as whether the subpoenaed information is potentially protected by a privilege."  *Mount Hope Church*, 705 F.3d at 428 (emphasis added).  Movant's challenge to Plaintiff's subpoena is the adjudication of a related follow-on issue— whether Movant's privacy interest trumps Plaintiff's need for the information sought—and does not relate to the subpoena process.  As a result, Movant is ineligible to recover attorneys' fees under Rule 45. *See id.*

Finally, it bears mentioning that Movant did not prevail on the merits of his motion, but achieved success through procedural delay.  As of the date of the hearing, Plaintiff had no reason to believe that Movant's ISP would have any information on them given the time delay from the stay of the proceedings.  Thus, even if Movant was eligible to recover attorneys' fees under Rule 45—and he is not—he has not prevailed in the sense that traditionally triggers the recovery of attorneys' fees.

## II.    Plaintiff's Subpoenas Were Issued in Good Faith

Even if Movant was eligible to recover attorneys' fees for adjudicating follow-on issues— and he is not—he has failed to show that Plaintiff's subpoenas were issued in bad faith.  Movant claims that Plaintiff issued its subpoena to Cox Communications in bad faith for, "three intertwined reasons: (1) deception; (2) the conspiracy claim is facially implausible; and (3) lack of evidence." (ECF No. 88 at 3.)

### A.    Movant's argument regarding "deception" fails because it is contrary to Ninth Circuit precedent

Movant's, "deception" challenge is inconsistent with Ninth Circuit precedent.  *See Mount Hope Church*, 705 F.3d at 428-29 ("We also agree with district court decision suggesting that Rule

1    45 places more emphasis on the recipient's burden than on the issuer's motives.").  Here, Movant's

2    conjecture regarding Plaintiff's motives is to be accorded lesser weight than the burden he bears in

3    responding to Plaintiff's subpoena.   Yet, in this case, Movant faces no burden whatsoever in

4    connection with responding to the subpoena Plaintiff issued to his Internet Service Provider.  *See*

5    *Voltage Pictures, LLC v. Does 1-5000*, 818 F.Supp.2d 28, 36 (D.D.C. 2011) ("[T]he putative

6    defendants face no obligation to produce any information under the subpoenas issued to their

7    respective ISPs and cannot claim any hardship, let alone undue hardship.").  Movant's total lack of

8    burden should trump his unsubstantiated conjecture regarding Plaintiff's motives.

9            It bears mentioning that Movant's conjecture regarding Plaintiff's motive is not supported by

10   any evidence whatsoever.  (*See* ECF No. 88 at 5) (alluding to "Plaintiff and Prenda Law's well

11   documented business model to squeeze the non-parties and other subpoena for settlement dollars"

12   but failing to cite to any such documentation or, more importantly, admissible evidence of the same.)

13   Plaintiff denies that the purpose of issuing subpoenas was to "squeeze [anyone] for settlement

14   dollars." Instead, Plaintiff affirmatively states that its purpose in issuing subpoenas was to seek

15   discoverable information for use in this case.  As set forth in its motion for discovery (ECF No. 39)

16   Plaintiff needs the information sought in its subpoenas to "establish the Defendant's liability and

17   ascertain the extent of the damages caused by the infringement to which Defendant contributed and

18   the conspiracy in which Defendant participated." (*Id.* at 2.)

19           **B.    Movant's argument regarding "lack of evidence" fails because it is contrary to
                     Ninth Circuit precedent**
20

21           Movant's "lack of evidence" challenge is also inconsistent with Ninth Circuit precedent.  *See*

22   *Mount Hope Church*, 705 F.3d at 428 ("[Plaintiff's] subpoena was facially valid under Rule 45.

23   [Plaintiff] was not required to include evidence refuting First Amendment protection in its

24

4

1    request."). Plaintiff was not required to include evidence refuting Movant's possible privacy

2    challenges with its subpoenas. Movant's challenge fails.

3         **C.    Movant's argument regarding Plaintiff's civil conspiracy claim is unfounded**

4         Movant argues that Plaintiff's subpoena was issued in bad faith because Plaintiff's, "civil

5    conspiracy claim is facially implausible." (ECF No. 88 at 4.) Accepting as true Movant's assertion

6    that Plaintiff's civil conspiracy claim is facially implausible—and it is not true—Movant's bad faith

7    argument nevertheless fails. Civil conspiracy is but *one* of the *three* claims Plaintiff asserted in its

8    complaint; Plaintiff's claims included direct infringement, contributory infringement and civil

9    conspiracy. (*See* ECF No.1.) It is sufficient that Plaintiff's subpoenas sought information relevant to

10   one of its claims. Movant does not challenge Plaintiff's direct or contributory infringement claims.

     (*See generally* ECF No. 88.) As such, Movant's challenge fails.

11        Nevertheless, for the sake of the avoidance of all doubt, Plaintiff addresses Movant's

12   challenge to its civil conspiracy claim. The crux of Movant's challenge is that several of the

13   date/time stamps associated with the IP addresses sought in Plaintiff's subpoena significantly post-

14   date the date of Mr. Harris' alleged infringement in the District of Columbia action. (*See id.* at 4.)

15   While Movant makes several erroneous assumptions in his challenge to Plaintiff's civil conspiracy

16   claim, the largest misassumption he makes is that the date/time stamps associated with the IP

17   addresses sought in Plaintiff's subpoena are the *only* times those IP addresses were in the swarm

18   formed with respect to Plaintiff's copyrighted work.

19        The truth of the matter is that the date/time stamps associated with the IP addresses sought in

20   Plaintiff's subpoena were the *latest* time (as of the issuance of the subpoena) that those IP addresses

21   were in the swarm. The point that Movant misses is that Internet Service Providers do not maintain

22   subscriber information indefinitely. Although there is no national data retention law, the industry

23   standard for the largest Internet Service Providers, including Cox Communications (the relevant ISP

24

here), is to maintain assignments for up to six months.[3] Thus, if Plaintiff were to issue subpoenas with date/time stamps originating in June 2011, as Movant seems to believe Plaintiff should have, then Plaintiff would simply have not received any responsive information from Movant's ISP. Instead, Plaintiff utilized the last known date on which Defendant's alleged co-conspirators participated in the swarm in order to maximize its chances of obtaining discovery of their identifying information.

**III.   The Fees Requested are Unreasonable**

Movant concedes that he is not "obligated to pay attorneys' fees beyond 20 hours." (*See* ECF No. 88 at 6.)  Yet, he seeks compensation for over 50 hours of his attorneys' time. (*See id.*)  At a minimum, the Court should reduce Movant's lodestar to reflect the fee he is contractually obligated to pay.  *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974) ("In no event, however, should the litigant be award a fee greater than he contractually bound to pay, if indeed the attorneys have contracted as to amount.").  Further, Movant's amended contract, introducing a contingency arrangement in the event of a sanctions award, should be rejected by the Court as void against public policy. The Court does not want to encourage the filing of frivolous sanctions motions.

**IV.   The Court Should Reduce Movant's Hours**

Movant correctly states that a court may reduce hours in making a reasonableness determination if the court finds that excessive time was spent. (ECF No. 88 at 8.)  On this point, Movant's motion speaks for itself. "The lion's share of the time was spent on the initial motion, which included a detailed factual background involving Plaintiff's formation, copyright infringement litigation campaign, and the issues brewing in the *Ingenuity 13* case in the Central District of California that directly impacted this particular case." (*See id.*)  Taking a step back, Movant is not a party to this case; he is an individual with information relevant to Plaintiff's claims and someone whom Plaintiff may (or may not) seek to name as a defendant at a later time.  His only standing at

---

[3] *See* Cox Communications Subpoena Compliance Policy, available at
http://www.cox.com/Policy/leainformation/LEAInformation_print.pdf (last visited August 15, 2013).

this stage is to argue whether Plaintiff's need for the information sought in its subpoena outweighs his privacy interest in his personally identifying information.   All of the issues surrounding Plaintiff's formation, its prior litigation efforts, and "issues brewing" in other cases have literally no relevance to Movant's current interests.   As such, even if Movant was eligible for fees—and he is not—the Court should reduce Movant's fees to an amount that reflects time that was *reasonably* spent.   By Movant's own admission, this would result in the elimination of a "lion's share" of the time his counsel billed, which would reduce the billed hours well below 20 hours.

## V.   Movant's Request for Joint and Several Liability Underscores the Frivolousness of his Motion

Plaintiff denies that Messrs. Duffy, Steele or Hansmeier are its officers, directors or de facto owners.   These individuals have previously served as Plaintiff's *attorneys*, and in this capacity they have been falsely accused by scores of infringers of being Plaintiff's owners.   There is nothing wrong with owning or representing a company that protects its intellectual property; it would be much easier for Plaintiff to eliminate the ownership canard by simply conceding the false narrative. However, unlike Movant and his peers, Plaintiff is not willing to make misrepresentations to a federal court for the sake of convenience.

The record in this case is clear and uncontroverted. Mark Lutz directed the formation of AF Holdings in mid-2011 and is its current manager. (ECF No. 59-6 ¶5.)   The membership interests in AF Holdings are held in a trust named, "Salt Marsh." (*Id.* ¶¶ 1-2.)   The class of potential beneficiaries of the Salt Marsh trust are, "any children born to or adopted by [Mr. Lutz], and any of [Mr. Lutz's] subsequent descendents." (*Id.* ¶¶ 3-4.)   Because Mr. Lutz does not have any children or descendents, the beneficiaries of the Salt Marsh Trust are presently undefined. (*Id.* ¶ 6.)   Mr. Lutz attended the Order to Show Cause hearing and testified regarding the statements he made in his affidavit.   His testimony was consistent with his affidavit.

Meanwhile, Movant's sole basis for assigning officer, director or ownership status to Messrs. Duffy, Hansmeier and Steele was Judge Wright's Order Issuing Sanctions in *Ingenuity 13 LLC v. John Doe*, No 12-cv-8333-ODW-JC (C.D. Cal. May 5, 2013) ECF No. 130.   For the reasons described in Plaintiff's response (ECF No. 56) to the Court's Order to Show Cause, the Court should place limited reliance on the Central District Court's order because it was based entirely on improper inferences from the Court's conjectures. (*See id.* at 11-12.)   Notably, no evidence was presented in any of the various show cause hearings regarding Plaintiff's ownership.   Further, Plaintiff was never given an opportunity to present evidence.   Movant's failure to cite to any evidence from the Central District Court's proceeding strongly suggests that there was literally no evidence to support the Court's findings.

As for Movant's statements regarding Mr. Gibbs, Plaintiff would simply point the Court to Mr. Gibbs' statements in a declaration dated December 20, 2012.   Gibbs Declaration, attached hereto as Exhibit A.   In his declaration, Gibbs stated that he "advise[d] and educate[d] other attorneys working with Prenda Law, Inc., as well as Prenda Law's clients, generally on proceeding in lawsuits protecting the rights of copyright holders in federal court." *Id.* ¶ 7.   Further, Gibbs stated, "In my role as advisor and educator, I help Prenda Law, as well as their clients, retain counsel to bring lawsuits in other states, and consult with the lead counsel on those cases as the cases progress.   I occasionally help lead counsel prepare documents, including motions and response to facilitate lawsuits representing their clients." *Id.* ¶ 8.   Finally, Gibbs stated, "In July of 2012, several clients of Prenda Law, Inc.–Sunlust Pictures, First Time Videos, Openmind Solutions, *AF Holdings, LLC* and Ingenuity13 LLC–needed to file copyright infringement lawsuits against alleged copyright infringers of those clients' copyrighted works." *Id.* ¶ 9 (emphasis added).   Gibbs' statements in the attached declaration are consistent with the experience of the undersigned counsel.   The undersigned cannot speak to Gibbs' statements that relate to cases that have nothing to do with this case.   In sum, Movant has offered nothing but unsubstantiated statements to link Messrs. Duffy, Hansmeier or Steele to the instant action.

**CONCLUSION**

The Court should deny Movant's motion for attorneys' fees

Dated this 6th day of December, 2012

Law Offices of Steven James Goodhue

By:  /s/ Steven James Goodhue
Steven James Goodhue (#029288)
9375 East Shea Blvd., Suite 100
Scottsdale, AZ  85260
*Attorney for Plaintiff*
*AF Holdings, L.L.C.*

I hereby certify that on August 16, 2013, I electronically filed the foregoing with the Clerk of the Court for filing and uploading to the CM-ECF system which will send notifications of such filing to all parties of record.

**A COPY** of the foregoing was mailed (or
serued via electronic notification if indicated by
an "*") on August 16, 2013, to:

David Harris* (troll.assassins@cyber-wizards.com)
4632 East Caballero Street, #1
Mesa Arizona  85205

Paul Ticen, Esq.* (paul@kellywarnerlaw.com)
Kelly/Warner, PLLC
404 S. Mill Ave, Suite C-201
Tempe, Arizona  85281

/s/ Steven James Goodhue