Paul D. Ticen (AZ Bar # 024788)
**Kelley / Warner, P.L.L.C.**
8283 N. Hayden Rd., #229
Scottsdale, Arizona 85258
Tel: 480-331-9397
Dir Tel: 480-636-8150
Fax: 480-907-1235
Email: paul@kellywarnerlaw.com

Attorney for Non-Party Subpoena Targets

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AF HOLDINGS, L.L.C., a St. Kitts and Nevis limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>DAVID HARRIS,<br><br>Defendant. | Case No.: 2:12-cv-02144-PHX – GMS<br><br>**NON-PARTIES' REPLY IN SUPPORT OF THEIR MOTION FOR ATTORNEYS' FEES** |

Non-parties, who are identified by IP Address Nos. 72.223.91.187, 68.230.120.162, 68.106.45.9, 68.2.87.48, 98.165.107.179 and 68.2.92.187 and targeted through a subpoena duces tecum issued in connection with this matter, submit a Reply in support of their Motion for Attorneys' Fees. Plaintiff's Response fails to rebut the non-parties showing that they are eligible and entitled to attorneys' fees because Plaintiff either ignores argument and case law, or takes it out of context. And significantly Plaintiff makes up logic defying facts in support of its position that the non-parties were Mr. Harris' co-conspirators. The Court should award the non-parties their attorneys' fees

1

in the amount of **$17,225**[1], which would have never been incurred but for Plaintiff's bad faith subpoena.

## A.  Non-Parties Are Eligible To Recover Attorneys Fees For a Subpoena Issues In Bad Faith

Ninth Circuit precedent is clear.  Non-parties are eligible to recover attorneys' fees pursuant to Rule 45(c)(1) and 26(g)(1)(B), Fed. R. Civ. P., upon a showing, among other things, that a requesting party issued a subpoena in bad faith. *Mount Hope v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012), See Doc 88 at 2:10-13).  Surprisingly, Plaintiff cites *Mount Hope* as authority for its position that non-parties are not eligible. (See Doc. 89 at 2:13-18).  But the language cited by Plaintiff is taken out of context.  A fair reading of *Mount Hope* leaves no question that non-parties and subpoena recipients are both entitled to attorneys' fees in connection with a subpoena upon a proper showing and that a non-party's entitlement to same is no greater than a subpoena recipient.  705 F.3d at 429.  But what the 9th Circuit **does not hold** is that non-parties lack entitlement to attorneys' fees under the above rules.

Further, any perceived requirement that the non-parties must have "prevailed on the merits" before entitlement to attorneys' fees is without support.  The driving force behind quashing a subpoena bears little to no relevance to the entitlement determination. See *Id*. ("sanctions for issuing a subpoena are in no way supported merely because a party advocated a position in seeking discovery that lost").  Rather, sanctions under Rule 45(c)(1) are only appropriate when there is a finding of "undue burden imposed by an oppressive subpoena, a facially defective subpoena, or bad faith on the part of the requesting party." *Id.*

## B.  Plaintiff's Disjointed Arguments Fail to Rebut Its Bad Faith Issuance of the Subpoena.

Plaintiff's arguments supporting its position that it issued the subpoena in good faith, are unpersuasive and fail to rebut facts and argument demonstrating the bad faith

---

[1] The non-parties incurred attorneys fees in the amount of $1,350  (5.4 hours at $250 per hour) analyzing Plaintiff's Response and preparing the Reply.  See Exhibit A hereto.

2

**Kelly / Warner, PLLC.**
404 S. Mill Ave., Suite C-201
Tempe, AZ 85281
Telephone: (480) 331-9397

1    issuance. Plaintiff's entire position, in drawing a connection between the non-parties
2    and Mr. Harris, hangs on made up (and unsupportable) facts that defy logic.
3        Plaintiff absurdly claims that the non-parties participated in Mr. Harris' swarm in
4    June 2011 and the dates reflected in the subpoena attachment (Doc 44-1 at Pgs. 5-8)
5    merely reflect the last day each participated. (Doc 89 at 5:18-21). Really, all six of the
6    non-parties participation in downloading and uploading "Sexual Obsession" spanned
7    more than 1 1/2 years? It's doubtful that the acclaimed motion picture "The Shawshank
8    Redemption," let alone the Internet blockbuster "Sexual Obsession," would generate
9    such an interest in a movie that he/she would participate in a BitTorrent swarm for that
10   long. Despite the absurdity of this claim, which Plaintiff cannot corroborate with any
11   evidence whatsoever, key facts cuts against it. If Plaintiff observed the non-parties' IP
12   addresses in this swarm in June 2011, why weren't these IP addresses among the 1,000
13   that formed the basis of Plaintiff's initial lawsuit filed in the District of Columbia? The
14   court granted discovery, and Plaintiff unmasked the identity of thousands of account
15   holders (like Mr. Harris). Why didn't Plaintiff, through Prenda Law, send the non-
16   
17   parties a demand letter? Why hasn't Plaintiff produced same? The reasons why is
18   because Plaintiff, or its crack forensics team, first observed (purportedly) these
19   particular IP addresses participating in the swarm on the dates and times identified in
20   Doc 44-1. Plaintiff desperately made this claim up because it cannot overcome the fact
21   that the Complaint pleads the conspiracy claims in the past-tense and it targeted those
22   accused of infringing on dates after the filing date.
23       Plaintiff's distorted argument that it did not deceive the Court regarding the
24   issuance of the subpoena, completely ignores the fact that Plaintiff's motion glossed over
25   the dates of alleged infringement. Otherwise, the Court would have had the opportunity
26   to see that Plaintiff's justification - to identify Mr. Harris' co-conspirators - was
27   implausible and unsupported by evidence. Plaintiff's deception and overall bad faith can
28   only be explained by its ulterior purpose - to squeeze settlement dollars. Because as the
     non-parties pointed out, Plaintiff's conspiracy claim fails under 9th Circuit precedent.

1  (See Doc 88 at 4:2-10). Plaintiff and Prenda Law's business model has been well
2  documented, in this case, and others. And Plaintiff's claim that concerns over its
3  business are limited to Judge Wright, is incorrect. This past June, the District of
4  Minnesota in *AF Holdings, LLC v. John Doe*, re-opened six cases[2], several months after
5  the cases had closed, over concerns of settlements that occurred as a result of the Court
6  granting discovery based on a forged document. (See 0:12-cv-01445, Doc. 13 and Doc
7  34).

**C.  Plaintiff Ignores 9th Circuit Precedent That Fee Awards Are Based Upon Amount Charged By Reasonably Competent Counsel, Not The Fee Due Under the Agreement.**

Plaintiff's claim that the non-parties fee award is limited to the fee agreement ignores 9th Circuit precedent. Instead, Plaintiff offers authority from the 5th Circuit involving an award of attorneys' fees in a civil rights case that has been abrogated by the Supreme Court. (See Doc 89 at 6:8-9). (See *Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939 (1988) (holding that a fee agreement is but a single factor, not a determining factor, in awarding attorneys' fees)). Otherwise, Plaintiff fails to address (and thereby concedes) other factors whether the amount of fees is unreasonable.

**D.  The Non-Parties' Interest in Avoiding Plaintiff's Coercive Business Practices Coupled with Plaintiff's Self-Inflicted Conduct Justified the Hours Spent.**

The non-parties are six individuals, not a single individual male that Plaintiff claims. And they aren't simply individuals who merely possess information. They are individuals that Plaintiff deliberately targeted through a bad faith subpoena for the opportunity to collect approximately $18,000. Therefore, they had a strong interest in preventing this from occurring, especially under a conspiracy theory that was facially implausible. The non-parties motion (Doc 44) raised a number of important issues, namely, the developments in the Central District of California involving Plaintiff and its lawyers. Facts that impacted Plaintiff's right to subpoena the non-parties information in this case and its right to use the federal courts as a leverage to extract settlements.

---

[2] 12-1445, 12-1446, 12-1447, 12-1448, and 12-1449,

4

Plaintiff's attempt to recast the non-parties as having a very limited and pedestrian interest in this case is unavailing. Further, the non-parties motion, in significant part, prompted the Court's order to show cause, which Plaintiff delayed a couple different times, and which the non-parties had an interest in.

### E.  The Only Reasonable Inference is John Steele, Paul Hansmeier and Paul Duffy are Plaintiff's De Facto Owners and Personally Liable For Directing The Bad Faith Issuance of the Subpoena.

Plaintiff is a shell company that has no assets. When Plaintiff received a settlement, the money went into the lawyer's trust account, and Plaintiff is not paid anything out of these settlement proceeds. (See deposition of Paul H. Hansmeier, 2:12-cv-08333, Doc 71 at 10:18-11:10. And Plaintiff has never realized revenue from other sources. (*Id.* at 21:15-17). Plaintiff is bound by this testimony.

Further, John Steele is bound by his legal representative's admission that he has an interest in some of Prenda Law's larger clients. (See Doc 63 at 1:28-2:3; Doc 63-2). And Plaintiff, being one of these "larger clients," can be inferred from an e-mail sent by Plaintiff's Georgia counsel, that Mr. Steele has an interest in Plaintiff. (*Id.* at 2:3-2:7; Doc 63-3). These admissions, along with Brett Gibbs' testimony[3] during the Central District of California's show cause hearings and Judge Wright's factual findings, require Plaintiff to rebut with more evidence that a mere declaration/testimony from Mark Lutz that Plaintiff is owned by the Salt Marsh trust. First, Mr. Lutz was settling cases as a Prenda Law representative well after Plaintiff is formed sometime in 2011. (See Doc 44-2). This casts substantial doubt on the veracity of this claim. And neither Plaintiff Prenda Law, Mr. Steele, Mr. Hansmeier, Mr. Duffy or Mr. Lutz have ever produced the Salt Marsh trust documents. Second, these individuals have never adequately explained the obvious connection between Steele and an individual who coincidentally bears the last name Saltmarsh. (See Docs 62-3 and 63-5; See also 88-5 at Pg. 2, ¶ 5). The only reasonable inference that can be drawn is that Plaintiff is a shell company used by Mr.

---

[3] Doc 44 at 8:1-10; 9:13-10:10; (Ingenuity 13, 2:12-cv-08333 at Docs 49 and 93)

Steele, Hansmeier and Duffy to wage a litigation campaign designed to coerce settlements, that the person who directed Mr. Goodhue to issue the subpoena is personally liable, and that these individuals are jointly and severally liable because they acted in concert when executing Plaintiff's litigation strategy. Indeed Plaintiff fails to even make up facts, or offer conjecture, that individuals are neither personally liable for one's own conduct, and joint and several when individuals act in concert. As such Plaintiff concedes these arguments if these individuals are found to be Plaintiff's de facto owners.

Nevertheless, if the Court is not inclined to draw the same reasonable inference, the non-parties request that the Court consider the following two events that are soon to occur:

(1) On August 28, 2013, in *AF Holdings v. Navasca*, a court in the Northern District of California will conduct an evidentiary hearing on a number of issues. 3:12-cv-02396 (N.D. Cal.) at Doc. 103. The issues that will be addressed include whether Plaintiff has paid the awarded fees and costs[4], and if not, should Plaintiff be held in contempt. (*Id.*). Further issues include Plaintiff's ownership and any other individual or entity, other than Mark Lutz, who possess an ownership interest and for Plaintiff to explain the "'exact mechanisms by which the money goes from the law firms that represent it to Plaintiff." (*Id.*).

(2) Further, as noted above, a court in the District of Minnesota reopened up several cases and has since ordered Plaintiff to file a memorandum of law on or before August 26th why Judge Wright's factual findings are not binding against it under the common law doctrine of issue preclusion. (See 2:12-cv-01445 at Doc. 34). These factual findings include that Steele, Hansmeier and Duffy are the de facto owners of

---

[4] On July 22, 2013, the court awarded Mr. Navasca his attorneys' fees against Plaintiff in the approximately amount of $19,000. (See Doc 100

6

Plaintiff, Plaintiff is a shell company, and that they controlled and directed Plaintiff's litigation (as owners of the company).

Alternatively, the non-parties request an evidentiary hearing exploring these same issues. Whether the Court adopts the reasonable inference espoused by the non-parties, considers findings from the evidentiary hearing in the Northern District of California and/or Plaintiff's memorandum of law dealing with issue preclusion, or conducts its own evidentiary hearing, Plaintiff is a shell company, owned and controlled by the above individuals, who are jointly and severally liable for the non-parties' incurred attorneys fees in connection with the bad faith subpoena.

**F.** **CONCLUSION**

The non-parties have demonstrated eligibility and entitlement to attorneys' fees incurred in connection with Plaintiff's bad faith subpoena. Plaintiff's Response fails to rebut same, and its position rests on made up facts that the non-parties participated in the swarm for 1 1/2 years. And the evidence and facts overwhelmingly support that John Steele, Paul Hansmeier and Paul Duffy are Plaintiff's de facto owners, that the individual who directed Mr. Goodhue to issue the subpoena is personally liable, and that these individuals are jointly and severally liable because they acted in concert when executing Plaintiff's litigation strategy.

RESPECTFULLY submitted this 25th day of August, 2013.

**KELLY / WARNER, PLLC**

By  /s/ Paul D. Ticen
    Paul D. Ticen
    8283 N. Hayden Rd., #229
    Scottsdale, Arizona 85258
    Attorney for Non-Party Subpoena Targets

7

**Kelly / Warner, PLLC.**
404 S. Mill Ave., Suite C-201
Tempe, AZ 85281
Telephone: (480) 331-9397

## **CERTIFICATE OF FILING AND SERVICE**

Pursuant to the Case Management/Electronic Case Filing Administrative Policies and Procedures Manual ("CM/ECF Manual") of the United States District Court for the District of Arizona, I hereby certify that on August 25, 2013, I electronically filed:

### **NON-PARTIES' REPLY IN SUPPORT OF THEIR MOTION FOR ATTORNEYS' FEES**

with the U.S. District Court clerk's office using the ECF system, which will send notification of such filing to the assigned Judge and to the following counsel of record:

Steven James Goodhue
Law Offices of Steven James Goodhue
9375 East Shea Blvd., Suite 100
Scottsdale, Arizona 85260
E-Mail: sjg@sjgoodlaw.com
Attorney for Plaintiff

David Harris
4632 East Caballero Street, #1
Mesa, Arizona 85205
E-Mail: (troll.assassins@cyber-wizards.com)

**KELLY / WARNER, PLLC**

By   /s/ Paul D. Ticen
Paul D. Ticen
8283 N. Hayden Road, #229
Scottsdale, Arizona 85258
Attorney for Non-Party Subpoena Targets