```
 1                  UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF ARIZONA

 3

 4   AF Holdings, L.L.C., a St. Kitts    )
     and Nevis limited liability         )
 5   company,                            )
                                         )
 6              Plaintiff,               )  No. CV 12-2144-PHX-GMS
                                         )
 7              vs.                      )  Phoenix, Arizona
                                         )  July 19, 2013
 8   David Harris,                       )  11:21 a.m.
                                         )
 9              Defendant.               )
     _____)
10
                    REPORTER'S TRANSCRIPT OF PROCEEDINGS
11              BEFORE THE HONORABLE G. MURRAY SNOW
                         (Show Cause Hearing)
12   Appearances:

13   For the Plaintiff:          Steven J. Goodhue, Esq.
                                 LAW OFFICES OF STEVEN JAMES GOODHUE
14                               9375 E. Shea Blvd.
                                 Suite 100
15                               Scottsdale, Arizona  85260
                                 (480) 214-9500
16
     For the Defendant:          Mr. David Harris
17                               4632 E. Caballero St. #1
                                 Mesa, Arizona  85205
18                               (480) 297-9546

19   For the Movant:             Paul D. Ticen, Esq.
                                 KELLEY WARNER, P.L.L.C.
20                               404 S. Mill Avenue, Suite C201
                                 Tempe, Arizona  85281
21                               (480) 331-9397

22   Court Reporter:             Gary Moll
                                 401 W. Washington Street, SPC #38
23                               Phoenix, Arizona  85003
                                 (602) 322-7263
24
     Proceedings taken by stenographic court reporter
25   Transcript prepared by computer-aided transcription
```

P R O C E E D I N G S

THE COURT:  Please be seated.

THE CLERK:  This is CV 12-2144, AF Holdings v. Harris, on for show cause hearing.  Counsel, please announce.

MR. GOODHUE:  Your Honor, Steve Goodhue on behalf of AF Holdings.  Sitting with me is Mark Lutz, manager of AF Holdings, L.L.C.

THE COURT:  All right.  Is Mr. Harris present?

Mr. Harris is not present.  This hearing has been duly noticed and we will proceed with it.

Mr. Goodhue, I've indicated questions that I wanted answered.  You filed some pleadings with some information, and I have some questions with regard to that information as well.

Do you want to proceed?

MR. GOODHUE:  I'm willing to proceed, Your Honor.

I would just like to mention to the Court I just came in last night, and the weather here has not made me feel all that great, so if I'd be allowed to sit rather than stand, it would help me a great deal.

THE COURT:  All right.  That will be fine.  I want to you pull the microphone over and get as close to it as you can so that we can hear everything.

MR. GOODHUE:  Thank you.

THE COURT:  All right.  Mr. Ticen, are you here for

```
 1    those who are seeking to intervene?

 2              MR. TICEN:  (Nodding).

 3              THE COURT:  Please come -- you can come take your

 4    seat.

 5              All right.  You've signed a pleading, Mr. Goodhue,     11:23:12

 6    with respect to Raymond Rogers and Alan Cooper.  I guess I

 7    adequately know your position with that.

 8              Saltmarsh is a trustee whose trust is Mr. Lutz?

 9              MR. GOODHUE:  Mr. Lutz is --

10              THE COURT:  I mean a trust whose trustee is Mr. Lutz?  11:23:35

11              MR. GOODHUE:  Mr. Lutz is trustee of the Saltmarsh

12    trust, which is a member of AF Holdings, as I understand it.

13              The trust, I guess, has gone through a name change.

14    It's now the AF Trust.

15              THE COURT:  Are there any other members of            11:24:01

16    AF Holdings?

17              MR. GOODHUE:  No, Your Honor.

18              THE COURT:  So what's the new name of the trust?

19    AF Trust?

20              MR. GOODHUE:  AF Trust, Your Honor.                    11:24:10

21              THE COURT:  AF Trust is the sole --

22              MR. TICEN:  Beneficiary.

23              THE COURT:  Well, AF -- AF Trust is the sole member of

24    AF Holdings?  Is that correct?

25              MR. TICEN:  Yes.                                       11:24:25
```

```
 1          THE COURT:  And is there any other entity that has any
 2   interest in AF Holdings?
 3          MR. TICEN:  No.
 4          THE COURT:  And the only beneficiaries of AF Trust
 5   are -- has present nonexistent persons?                      11:24:35
 6          MR. TICEN:  Yes.
 7          THE COURT:  And did you receive Exhibit B from
 8   Mr. Lutz?  Exhibit B to the complaint?
 9          MR. GOODHUE:  I received Exhibit B through an attorney
10   for Mr. Lutz.                                                11:24:53
11          THE COURT:  Are you aware if Mr. Lutz or any of his
12   business associates used the screen name Sharkmp4?
13          MR. GOODHUE:  I'm not aware with -- aware of Sharkmp4
14   at all.
15          THE COURT:  All right.  To the extent that the        11:25:17
16   previous -- the plaintiff previously sought and received the
17   discovery of the identities of the persons involved in the
18   Internet swarm in the district court action that was brought in
19   the District of Columbia, why should I reauthorize that here?
20          MR. GOODHUE:  Like I stated in our -- in our          11:25:36
21   memorandum, Your Honor, it's seeking --
22          THE COURT:  Well, when you file a memorandum five
23   minutes before a hearing, don't expect me to be able to read it
24   before the hearing.
25          MR. GOODHUE:  I understand, sir.                      11:25:48
```

```
 1          It's seeking different discovery of different
 2   infringers.
 3          THE COURT:  How do I know that?  There isn't anything
 4   in your request that indicates that you are seeking different
 5   discovery of different infringers.                          11:25:59
 6          MR. GOODHUE:  Well, I think in the motion for
 7   authorization it does speak to that as to what we were seeking.
 8          THE COURT:  And it does not specify who you're seeking
 9   it as to.
10          MR. GOODHUE:  Well, we cannot -- you mean in terms of  11:26:16
11   an identity?
12          THE COURT:  That's correct.
13          MR. GOODHUE:  Well, that's what we're seeking is the
14   identity --
15          THE COURT:  No, it just says:  Plaintiff, AF Holdings,  11:26:25
16   through its undersigned counsel, hereby moves this Court for an
17   authorizing issuance of subpoenas granting limited discovery to
18   identify defendant David Harris' co-conspirators.  That's all
19   you say.
20          MR. GOODHUE:  I think there was a little more to it,  11:26:44
21   Your Honor.
22          THE COURT:  Well, that's true, there is more to it,
23   but where do you identify in it specific --
24          MR. GOODHUE:  You mean the specific IP --
25          THE COURT:  -- IP addresses that you want the         11:26:57
```

1    identities for?  Or ISP addresses.

2            And where is it that you inform me how and why it

3    isn't duplicative of discovery that you already sought and

4    obtained of the same Internet swarm in a different action?

5            MR. GOODHUE:  It maybe isn't clear in -- in                    11:27:13

6    distinguishing between the D.C. case and this case.

7            THE COURT:  And so it would authorize duplicative

8    discovery that you've already obtained.

9            MR. GOODHUE:  Well, it certainly wasn't the intent to

10   seek duplicative discovery, sir.                                       11:27:30

11           THE COURT:  Um-hum.  To the extent that the plaintiff

12   has now reasserted the same claims resulting from the same

13   swarm in a different court, where those previous settlements

14   have caused plaintiff to forfeit or otherwise affect

15   plaintiff's current claims in this case, certainly as it              11:27:56

16   pertains to seeking statutory special -- or statutory damages?

17           MR. GOODHUE:  Your Honor, I believe we're seeking

18   different individuals than were in the District of Columbia

19   case --

20           THE COURT:  Well, that doesn't matter, does it?  The          11:28:16

21   statute, I have it here in front of me, the statute refers to,

22   as it pertains to statutory damages:  The copyright owner may

23   elect at any time before final judgment is rendered to recover,

24   instead of actual damages and profits, an award of statutory

25   damages for all infringements involved in the action with            11:28:37

```
 1    respect to any one work for which any one infringer is liable

 2    individually or for which any two or more infringers are liable

 3    jointly and severally.  And that's -- that's telling me that's

 4    a limit for everyone involved in that swarm.

 5            So you've gone out and settled your case with certain      11:29:00

 6    persons who were involved in that swarm.  You can't seek

 7    statutory damages any more, can you?

 8            MR. GOODHUE:  I don't -- I don't believe that the

 9    statute speaks to limiting damages within a swarm.  I believe

10    it limits damages within a particular case, and --               11:29:17

11            THE COURT:  That doesn't -- well, what difference does

12    that make?  In this case, you're seeking to recover damages

13    against Mr. Harris for multiple infringements in the same

14    swarm.

15            MR. GOODHUE:  Well, it wasn't the same -- it's not the    11:29:32

16    same swarm in the Harris case as it is in the D.C. case.

17            THE COURT:  You know, that's baloney.  I looked this

18    morning at Mr. Harris as being identified in the D.C. case with

19    the very same swarm at the very same time that you're seeking

20    to recover against him in this case.                             11:29:51

21            MR. GOODHUE:  Mr. Harris what?

22            THE COURT:  How in the world can you tell me that's a

23    different swarm by any definition?

24            MR. GOODHUE:  Because I admit that Mr. Harris was

25    identified in the D.C. case, but the --                          11:30:02
```

```
 1              THE COURT:  And for participation in the same swarm,

 2    in this swarm.

 3              MR. GOODHUE:  Well, the swarm is a growing entity --

 4              THE COURT:  Okay.

 5              MR. GOODHUE:  -- and the discovery is --              11:30:14

 6              THE COURT:  It doesn't matter, though, because you

 7    pled joint and several liability to everyone involved in the

 8    swarm.

 9              MR. GOODHUE:  Well, we -- we haven't elected whether

10    it's statutory damages or actual damages --                   11:30:24

11              THE COURT:  I understand that.  And my question:  Is

12    because you've already settled this case with some of the

13    participants in the same swarm, how can you now get anything

14    other than actual damages from Mr. Harris?

15              MR. GOODHUE:  Well, I think the -- the Lime Wire case 11:30:40

16    speaks directly to that, and that --

17              THE COURT:  Which case is that?

18              MR. GOODHUE:  It's the case out of the Southern

19    District of New York --

20              THE COURT:  Oh, the Kimba Wood case that you --      11:30:48

21              MR. GOODHUE:  Yes, sir.

22              THE COURT:  -- referred to?  I didn't get through your

23    whole pleading, but I saw that.

24              Well, that doesn't provide any precedent to me

25    whatsoever.  I am of the same authority as Judge Wood, am I    11:30:58
```

```
1    not?
2             MR. GOODHUE:  I understand, but it speaks directly to
3    this, in my view, that we're not -- we're not speaking to a
4    settlement in the swarm, we're speaking to a settlement within
5    a case, and --                                                    11:31:10
6             THE COURT:  Well, you are speaking -- you made a
7    settlement with individuals who -- who infringed your copyright
8    as a result of their participation in the same swarm in which
9    Mr. Harris participated, is that not correct?
10            MR. GOODHUE:  He was identi --                           11:31:27
11            THE COURT:  Just yes or no, is that not correct?
12            MR. GOODHUE:  I don't have personal knowledge of that.
13   I understand --
14            THE COURT:  Is it your understanding that you have --
15   that your client, AF Holdings, has settled claims for            11:31:39
16   infringements that resulted from the same swarm in which
17   Mr. Harris participated?
18            MR. GOODHUE:  Yes, Your Honor.
19            THE COURT:  All right.  So why is it, again, your
20   position that you're not -- your position more or less relies    11:32:05
21   on the Judge -- Judge Wood's case out of the Southern District
22   of New York?
23            MR. GOODHUE:  Yes, Your Honor.
24            THE COURT:  And so what are you saying you have a
25   right to do?  Elect statutory damages with respect to some       11:32:16
```

1    individuals and actual damages with respect to others involved

2    in the same swarm, even though you're asserting joint and

3    several liability against all participants in the swarm?

4            MR. GOODHUE:  No.  Under the interpretation by

5    Judge Wood of 504 in speaking about a case, it's a particular          11:32:32

6    case, and it's not speaking to the swarm, and --

7            THE COURT:  How can that be, when you have pled joint

8    and several liability against Mr. Harris for all other

9    participants in that swarm and you have settled your claim

10   against other participants in that swarm?                              11:32:53

11           MR. GOODHUE:  Well, we've pled alternatively actual

12   damages, and it's --

13           THE COURT:  Well, that's my question.  Why haven't

14   your settlements resulted in the fact that you now must pursue

15   Mr. Harris for actual damages only?                                    11:33:11

16           MR. GOODHUE:  Well, again, as I understand it, Your

17   Honor, the issue of settlements can be taken into account at

18   the time of -- by the trier-of-fact at the time of an award of

19   damages.

20           THE COURT:  Well, okay, I appreciate that, and that            11:33:26

21   seems to make logic to me.  But why can't I take it into

22   account now when you've previously done this discovery, at

23   least to some extent, in the district -- action that you filed

24   in District of Columbia, and other actions, perhaps, that I

25   don't know about --                                                    11:33:43

1           Sir, who are you?

2           MR. HARRIS:  I'm David Harris for the defense.

3           THE COURT:  Please take your seat.  You need to be

4    here on time, Mr. Harris.

5           MR. HARRIS:  I'm sorry.  Sorry I'm late.                    11:33:52

6           THE COURT:  All right.  Where were we?

7           MR. GOODHUE:  I'm sorry, Your Honor.

8           THE COURT:  All right.  Here's where we're at.

9           You indicated that I could take that into account once

10   we got to the damages phase, and I'm asking you why is it that    11:34:06

11   I can't take it into account now, when you're seeking to get

12   all kinds of discovery related to those who may have

13   participated with Mr. Harris in a -- in what you allege he is

14   joint and severally liable for when you've already settled some

15   of those claims?                                                  11:34:25

16           And so doesn't that make irrelevant the extent to

17   which there may have been other participants in those claims?

18           MR. GOODHUE:  I certainly see the Court's point, but I

19   would respectfully disagree that it's --

20           THE COURT:  Well, I understand that, too.  But you're     11:34:43

21   asking me to authorize subpoenas to go out to, as far as I

22   know, thousands and thousands of individuals that are ongoing,

23   many of which you've already discovered, in a -- on a basis for

24   which that may be completely irrelevant.  And as you yourself

25   have acknowledged, that is disruptive both to the providers and   11:34:58

```
 1    to the individuals.
 2            So I'm expecting some resolution or some position from
 3    you that would justify that kind of discovery in this case, and
 4    that would not limit your case against Mr. Harris to only the
 5    actual damages that he may have caused you due to his          11:35:18
 6    infringement.
 7            MR. GOODHUE:  Well, I guess from a practical
 8    standpoint, Your Honor, at this point trying to subpoena those
 9    records would be a fruitless exercise, since the information
10    has probably been destroyed by the ISPs.  It's my understanding  11:35:34
11    that they keep this information for maybe six months, and after
12    that it's no longer available.
13            THE COURT:  All right.  But my point -- let me go back
14    to my point.  Your client, and as I -- I've indicated, I'm
15    aware of a number of actions that they filed in various         11:35:52
16    jurisdictions.  It seems to me that they can file one action,
17    and to the extent they have subpoenas that involve other ISP
18    providers in other jurisdictions, they can do what everybody
19    else does when they subpoena information against other ISP
20    providers, and they can subpoena that information in a          11:36:10
21    miscellaneous action in the appropriate jurisdiction.
22            If then the swarm is ongoing, it isn't shut down, it
23    seems to me they can renew those subpoenas.  You've already had
24    that opportunity at least once in your Washington action.  I
25    don't know how many other actions you may have filed involving  11:36:23
```

1   this same Internet swarm.  But you've settled those cases, or

2   at least it's your understanding that you've settled those

3   cases, and it's my understanding, based on pleadings that you

4   filed both here and that your client filed in the D.C. court,

5   that you settled some of those cases with individual providers.   11:36:38

6          Now you want discovery of that same information

7   because you're alleging that they're joint and severally liable

8   with Mr. Harris and you can discover them.  But I -- I guess

9   before I'm going to give you that information you have to

10  persuade me that there is some basis on which your client       11:36:54

11  hasn't already precluded themselves from seeking anything other

12  than actual damages against Mr. Harris because of their

13  previous settlements of same persons in this same Internet

14  swarm that were involved in the same action.

15         And I guess what it comes down to is you're telling me   11:37:10

16  that the -- the relevant authority that you provided me that I

17  should review is Judge Wood's order in the Southern District of

18  New York.

19         MR. GOODHUE:  Yes, Your Honor, and I think it --

20         THE COURT:  And -- and so if I agree with Judge Wood,    11:37:24

21  then let's -- let's go down this decision tree, since you're

22  here.  I'm not saying that I will agree with Judge Wood, and I

23  think, as you can tell, I have some skepticism that I will,

24  but -- but I'm not saying I won't.  I have to consider

25  carefully what she's written.  Or he's written; I'm not sure    11:37:41

```
 1    whether Kimba's a man or a woman, I apologize.
 2            MR. GOODHUE:  It's a woman, Your Honor.  She was the
 3    Clinton appointee for --
 4            THE COURT:  Yeah.
 5            MR. GOODHUE:  -- attorney general.                    11:37:51
 6            THE COURT:  I thought she was a woman, but in any case
 7    wasn't positive.  Okay.  So I'll read carefully what she's
 8    written.  If I disagree, then you would agree with me that
 9    you're not getting the subpoenas unless and until you can
10    reverse my decision on appeal.                               11:38:04
11            If I agree with her, why should I authorize
12    information that you've already received in the D.C. action,
13    and how can you -- and how would you specify to me those
14    persons, or those entities, those ISP addresses that you didn't
15    already receive in the D.C. action?                          11:38:23
16            And it seems to me if you're going to do these things
17    efficiently, you do this discovery once.  And if you need to
18    renew it, you renew it in the same action for -- for additional
19    participants.  But that's going to require that you elect
20    between statutory and actual damages before you settle a claim,  11:38:37
21    isn't it?
22            MR. GOODHUE:  That may be, Your Honor.  I guess you
23    have to look at this from a practical standpoint, and sort of
24    the --
25            THE COURT:  I agree.  And I don't think that it's     11:38:49
```

```
1   unfair -- I mean, I don't think it's unfair to consider the

2   fact that your client does have some sort of copyright

3   infringement claim.  But if we're talking about fairness, I

4   think we also have to consider the extent to which your client

5   may be taking what is at best an extremely aggressive stance      11:39:05

6   vis-a-vis persons who are unaware of their legal rights, and at

7   worst it may be extortion if they go out and represent that

8   they still have a right to recover $150,000 against individuals

9   they no longer have such a right to recover against.

10        Do you understand what I'm saying?                         11:39:28

11        MR. GOODHUE:  I understand that completely, Your

12   Honor, and I guess I look at it as when the D.C. case was

13   filed, I think there were estimated to be 10,000 participants

14   in the swarm, and to try to do discovery on 10,000 ISPs, or IP

15   addresses, is a huge burden on everyone.  What they did, it      11:39:52

16   seems to me, they took, you know, a tenth of that.

17        You look at today, I understand the Game of Thrones

18   had a -- had a swarm population of 10 million within a week.  I

19   mean, I don't really know the answer to how to handle those

20   types of cases under a Copyright Act that had had no             11:40:13

21   understanding or no anticipation that you could have these

22   types of copyright infringements.

23        THE COURT:  Well, you're not asking me to rewrite the

24   legislation.

25        MR. GOODHUE:  No, Your Honor.  I'm just saying from a       11:40:28
```

1   practical standpoint, I'm not sure how else you can do this,

2   other than to sort of take it down in parts.  And I understand

3   you don't want to do duplicative discovery; I understand you

4   don't want to collect damages where you are barred for

5   statutory damages, at least, under the Copyright Act.                    11:40:48

6           But at the same time, I think Judge Wood's opinion

7   gives a pretty good perspective on how that -- how the

8   Copyright Act and Section 504 should be interpreted.

9           THE COURT:  Well, did you provide a copy of your

10  pleading to Mr. Harris so that he can respond?                           11:41:08

11          MR. GOODHUE:  I haven't.  I provided it to Mr. Ticen,

12  but I have a copy with me.

13          THE COURT:  All right.

14          So basically, whether or not -- there is no question

15  about whether the action against Mr. Harris proceeds, and you           11:41:23

16  seem to want to proceed against it.  Let me ask one other

17  question:  To the extent that there are actual damages that

18  you're -- that you have to proceed against Mr. Harris under an

19  actual damage basis, as opposed to a statutory damage basis, is

20  there any basis on which you could claim that those with whom           11:41:42

21  he participated in the BitTorrent swarm have any relevance to

22  the actual damages he caused your client?

23          MR. GOODHUE:  I don't believe so, no, Your Honor.

24          THE COURT:  All right.  So really, this is a question

25  we're going to have to resolve first.                                   11:42:01

1          MR. GOODHUE:  And Your Honor, like I said, from a

2    practical -- I hate to just keep repeating myself -- from a

3    practical matter, getting the discovery, that time has probably

4    passed.  Pursuing Mr. Harris --

5          THE COURT:  So do you wish to then continue to urge          11:42:16

6    this?  You can let Mr. Ticen's clients out of the case right

7    now if as a practical matter it makes no difference, and you

8    can pursue your claim for actual damages against Mr. Harris.

9    And I suppose that he wants to conduct discovery to determine

10   whether or not your client actually uploaded this, was the          11:42:33

11   person that upload -- at least I've read -- what I've read is

12   that your client was the person who uploaded this movie in the

13   BitTorrent swarm in the first place, which would have some

14   effect on his actual damages.

15         But we can proceed -- if you want to let Mr. Ticen's          11:42:49

16   clients out and drop your request for the subpoena, we can

17   proceed on your actual damages claim against Mr. Harris.

18         MR. GOODHUE:  That would certainly be our position.  I

19   think -- the opportunity to pursue Mr. Ticen's clients or

20   people in similar positions is really no longer available.          11:43:06

21         THE COURT:  All right.  So you're dismiss --

22         MR. GOODHUE:  And he was -- they were never joined.

23   I'm not exactly sure what his clients --

24         THE COURT:  I think they're only here because you

25   sought the subpoenas against them.                                  11:43:19

```
 1              Is that correct, Mr. Ticen?

 2              MR. TICEN:  Yes, Your Honor.

 3              THE COURT:  All right.  So if the subpoena request is

 4    dropped, is there any reason for your further participation in

 5    this case?                                                        11:43:32

 6              MR. TICEN:  Yes, Your Honor, because it's our position

 7    that the subpoena was issued in bad faith.

 8              THE COURT:  That the what?

 9              MR. TICEN:  Subpoena was issued in bad faith.

10              THE COURT:  And so what would you want?               11:43:40

11              MR. TICEN:  Our attorneys' fees.

12              THE COURT:  Okay.  So basically, what would be left

13    would be your attorneys' fees claim?

14              MR. TICEN:  Correct.

15              THE COURT:  But you're not then claiming any right to  11:43:48

16    participate in the substance -- substantive resolution for the

17    resolution of this case?

18              MR. TICEN:  No, Your Honor.

19              MR. HARRIS:  Your Honor, could I ask for a little

20    clarification?                                                   11:44:02

21              THE COURT:  You know, Mr. Harris, let me tell you, you

22    certainly can, and you're a party to this suit.  I have allowed

23    Mr. Goodhue to remain seated.  I shouldn't have allowed

24    Mr. Ticen to remain seated --

25              MR. HARRIS:  I apologize, Your Honor.                  11:44:11
```

1          THE COURT:  -- and ask them to come to the podium.

2          And I'll just tell you, Mr. Harris, Mr. Goodhue asked

3    to remain seated because, as you are at least vaguely aware, he

4    has had some health issues, which has resulted in the

5    resumption of this hearing.  He apparently lives in Colorado          11:44:22

6    and the heat's a little much for him, which is understandable.

7          So Mr. Ticen, Mr. Goodhue, without any prejudice to

8    you, if you're going to address me and I recognize you, I'm

9    going to ask you to come to the podium and speak in the

10   microphone.                                                          11:44:36

11         So Mr. Ticen, do you have anything further to say?

12         And then Mr. Harris, we'll hear from you.

13         MR. TICEN:  As far as the attorneys' fee issue, do you

14   want us to address that in motion form and --

15         THE COURT:  Well, first, I guess what I want to know         11:44:47

16   is:  In light of the fact that you are going to seek your

17   attorneys' fees, Mr. Goodhue, I take it that doesn't

18   necessarily change your position that you no longer seek to

19   subpoena the third parties?

20         MR. GOODHUE:  No, Your Honor.                                 11:44:59

21         THE COURT:  Okay.  So you still don't want to subpoena

22   the third parties and you drop that request.

23         MR. GOODHUE:  Correct, Your Honor.

24         THE COURT:  Which in any case, I think I've denied

25   without prejudice, but you're not going to be renewing it.          11:45:06

```
 1              MR. GOODHUE:  Correct, Your Honor.

 2              THE COURT:  All right.  So Mr. Ticen.

 3              MR. TICEN:  Yes, Your Honor.

 4              THE COURT:  Now, what were you going to ask me?

 5              MR. TICEN:  As far as the request for attorneys' fees,   11:45:14

 6    I'm assuming that you want that by motion and --

 7              THE COURT:  Yes.

 8              MR. TICEN:  -- if so, do you want a -- is a deadline

 9    going to be set, either right now or -- or by order?

10              THE COURT:  How long is it going to take you to file   11:45:29

11    such a motion?

12              MR. TICEN:  I would think at least 14 days --

13              THE COURT:  All right.

14              MR. TICEN:  -- 21 days.

15              THE COURT:  I'll give you 14 days to file such a   11:45:38

16    motion.  You might look to the local Rules of Civil

17    Procedure -- I think it's 54.2; it's in the 54s -- about what

18    you're going to need to do to request your attorneys' fees,

19    including the form of the affidavit and other matters.  All

20    right?  I'll ask you to follow that.   11:45:54

21              MR. TICEN:  Okay, Your Honor.  Thank you.

22              THE COURT:  Anything else that you want to take up at

23    this time, Mr. Ticen?

24              MR. TICEN:  There is nothing else, no.  No, Your

25    Honor.   11:45:59
```

1          THE COURT:  All right.  Thank you.

2          Mr. Harris, please come forward.

3          MR. HARRIS:  I have a -- I'd like clarity on the --

4  Mr. Ticen?  Mr. Ticen, his clients and -- and the subpoena for

5  him.  His -- his clients are part of -- were not part of the          11:46:22

6  original D.C. case, correct?

7          THE COURT:  I have no idea.

8          MR. HARRIS:  Well, if you check the dates on the --

9  the subpoena, which were issued to the ISPs, the dates were

10  late last year-early this year.          11:46:37

11          THE COURT:  All right.  So it's possible.

12          MR. HARRIS:  Okay.

13          THE COURT:  I don't -- I just simply don't know.

14          MR. HARRIS:  I just want to bring it to the Court's

15  attention that of -- of those 308, I have already been          11:46:46

16  approached by one of these co-conspirators.  They called me on

17  the telephone.  I guess my name is on the subpoenas.

18          THE COURT:  Yes, your name's on the subpoenas because

19  the case is titled in your name.

20          MR. HARRIS:  Okay.  I just want it on the record of          11:47:02

21  the inherent danger I've been put in, due to these subpoenas

22  that -- I believe the Court didn't give him leave to

23  actually -- he filed before he actually filed a motion for --

24          THE COURT:  Right, but he has -- but those subpoenas

25  are now quashed, unless you have an objection, Mr. Goodhue.          11:47:21

```
 1              MR. GOODHUE:  No, Your Honor.

 2              THE COURT:  Okay.  I'm going to enter an order

 3    quashing all of those subpoenas to the extent they're still

 4    outstanding.

 5              Are they still outstanding?  Mr. Ticen?              11:47:30

 6              MR. TICEN:  The last I heard from the ISPs, they are

 7    waiting for an actual further court order on what to do.

 8              THE COURT:  All right.  Thank you.  So in the absence

 9    of any objection by Mr. Goodhue, I'm going to issue an order

10    quashing all of those subpoenas, so they are -- those subpoenas  11:47:51

11    are canceled --

12              MR. HARRIS:  Okay.

13              THE COURT:  -- for all practical purposes, Mr. Harris.

14              MR. HARRIS:  I would also like to address the

15    perception of -- of my incivility in this court --            11:48:01

16              THE COURT:  All right.

17              MR. HARRIS:  -- which I have been sanctioned for, but

18    I would like to wait until the end of this hearing for --

19              THE COURT:  All right.

20              MR. HARRIS:  -- to do that.                          11:48:12

21              THE COURT:  Well, I think the hearing is, for all

22    practical purposes, over, except for I want to explain to you

23    how the case now stands as I understand it, based on my

24    conversation with Mr. Goodhue, and you were only here for part

25    of it.                                                        11:48:27
```

1          Mr. Goodhue is now -- Mr. Goodhue and his client are

2     now only pursuing you -- they're not pursuing you for the

3     statutory damage option under the statute; they are suing you

4     for the actual damages that your infringement costs them.

5          Is that a correct understanding, Mr. Goodhue?                    11:48:42

6          MR. GOODHUE:  Yes, Your Honor.

7          THE COURT:  All right.  And it's also my understanding

8     from my conversation with Mr. Goodhue that they do not any

9     longer take the position in this lawsuit that you -- your

10    actual dam -- that the extent to which others participated in          11:49:03

11    the same BitTorrent swarm in which you may have participated

12    has any bearing on the actual damages that you cost their

13    client.

14         Is that also correct, Mr. Goodhue?

15         MR. GOODHUE:  Yes, Your Honor.                                    11:49:18

16         THE COURT:  All right.  So what that means is they're

17    seeking to recover damages as -- from you, the actual damages

18    that they allege they suffered due to the fact that they allege

19    that you downloaded a copy of their copyrighted movie.

20         So what is going to be relevant going on is whether in           11:49:35

21    fact you did download a copy of their copyrighted movie, what

22    in fact you may have done with that copyrighted movie in the

23    future, and then I take it from the previous pleadings that you

24    filed you have -- you may wish to conduct discovery into

25    whether or not they, that meaning AF Holdings or their agent,         11:49:54

1    was actually the party that uploaded a copy of the movie on the

2    BitTorrent program in the first place.  Those all may have

3    bearing on the extent to which you actually caused AF Holdings

4    damage.

5         Do you understand what I'm saying?                    11:50:16

6         MR. HARRIS:  Yeah, your --

7         THE COURT:  Do you have --

8         MR. HARRIS:  So they --

9         THE COURT:  Do you feel --

10        MR. HARRIS:  -- at some point they'll -- they will    11:50:20

11   offer some evidence, other than --

12        THE COURT:  Well, let me explain part of this.

13        MR. HARRIS:  -- an IP address.

14        THE COURT:  I don't mean to suggest that you're not a

15   smart person, it seems to me that you are, but there is a whole  11:50:32

16   process that goes on in federal court here, and there is a

17   process now of this lawsuit that remains against you personally

18   in which we will schedule a period called "discovery."

19        Discovery is a period in which under the federal rules

20   they are allowed to ask you questions and you're required to   11:50:53

21   answer.  They can even notice up what's called your deposition,

22   and then you have to go and under oath answer certain

23   questions.  They can request documents from you.  They can also

24   request, if they can demonstrate to me that it's relevant,

25   looking at your computer to trace what you may have done        11:51:11

1  with -- whether or not their copyrighted program existed --

2  exists or existed on your computer, and what you would have

3  done with it.

4          MR. HARRIS:  Yeah, well, I must object to that.

5          THE COURT:  Well, you'll have the right --                    11:51:24

6          MR. HARRIS:  It's a process, but --

7          THE COURT:  You'll have the right to object when --

8          MR. HARRIS:  It's a matter of dirty hands with -- you

9  know, these --

10         THE COURT:  I don't mean to shut you --                       11:51:34

11         MR. HARRIS:  It's a matter of record and --

12         THE COURT:  You can say -- you can say what you wish,

13 Mr. Harris, but let me tell you that you may allege that they

14 have dirty hands, but while they're doing discovery against

15 you, you also have the right to do discovery against them to    11:51:48

16 demonstrate that it is a matter of dirty hands.

17         But I am not, in the discovery period, going to make

18 the determination whether AF Holdings has dirty hands or not,

19 because they have a -- what discovery does is allows them to

20 collect evidence against you to make their case, and at the     11:52:05

21 same time it allows you to conduct discovery against them to

22 make yours.

23         When you all have your evidence and put it in front of

24 me, then I can make a determination as to whether or not they

25 do have dirty hands, but I have to let them conduct their       11:52:20

```
 1    discovery to determine whether they do.
 2            I would also be, I think, remiss, though, in fairness
 3    both to you and to AF Holdings, not to observe that unless
 4    you've done something -- unless in fact you are responsible and
 5    have done something with their copyrighted film to allow others    11:52:36
 6    to reproduce it, I think that the actual damages you would have
 7    cost them, I mean, the case law suggests that we start out with
 8    the actual market value of that film.  So what we're talking
 9    about here is a very limited amount of money, an extremely
10    limited amount of money, which may not merit them going forward    11:52:55
11    or you going forward.  But that's a decision that you're
12    allowed to make and that they're allowed to make.
13            MR. HARRIS:  Okay.
14            THE COURT:  All right.
15            MR. HARRIS:  I guess at this time, in response to          11:53:07
16    that, I'd like to bring up a case where they -- a default
17    judgment was found against a -- one of the original 1140 in the
18    D.C. case.  That was here in Arizona, case
19    number CV 12-0213-PHX-GMS, a Brian Trottier.  He got a default
20    judgment, it's been satisfied, for $7500.  And that was in the    11:53:34
21    court of Judge Murray Snow.
22            THE COURT:  Yes.
23            MR. HARRIS:  So -- so that would sort of offset
24    whatever a -- the cost of a smut film costs.
25            THE COURT:  Okay.                                          11:53:49
```

 1          MR. HARRIS:  That is my understanding of what you just

 2    said what I --

 3          THE COURT:  Well, if you go back and look at the

 4    statute you'll see a couple of things.  One is they have a --

 5    they have a right -- it's part of the discussion that I was          11:54:03

 6    just having with Mr. Goodhue.  AF Holdings has a right to

 7    pursue claims for their copyright infringement against everyone

 8    who has infringed their copyright, and -- and you've just

 9    listed someone who they at least claimed infringed their

10    copyright.                                                           11:54:24

11          When they bring a copyright action, they have the

12    right to elect, in many circumstances, at least, if they

13    haven't otherwise forfeited it, they have a right to elect

14    whether or not they will seek statutory damages or whether

15    they'll seek actual damages.                                        11:54:41

16          When they settled their previous claim against that

17    person they had not yet made such an election, he had merely

18    allowed them to take a default judgment, and then they sought

19    statu -- you know, they sought an award based on the potential

20    that they could receive under statutory damages.  So an award      11:54:57

21    was made.

22          MR. HARRIS:  But was --

23          THE COURT:  I will tell you that in your case --

24          MR. HARRIS:  I was part of --

25          THE COURT:  You need to wait, Mr. Harris, especially         11:55:06

1   when I'm talking, because even though you don't wish to be

2   impolite, I get to talk first and then you can talk, too.  And

3   I'll let you talk, I promise.

4        They no longer have the right to seek statutory

5   damages against you, so the ceiling is no longer the statutory          11:55:20

6   limit set forth in the statute of $150,000 or even $30,000; it

7   is what they can prove they lost because you copied their

8   movie.

9        And as I said, if you didn't do anything with the

10  movie, it doesn't seem likely, although I can't say for sure,          11:55:40

11  it doesn't seem likely that we're talking any kind -- you know,

12  that kind of a range of money.

13       But any party has the right to settle a suit early,

14  and they can settle for more dollars than they would have

15  otherwise received in a claim.  And if they don't defend the           11:56:00

16  suit -- as you are now doing, you're defending the suit -- but

17  if somebody doesn't defend the suit, then they end up getting

18  an award because somebody didn't defend the suit.

19       But that suit in this setting doesn't really any

20  longer have much relation to your suit because, as you've heard        11:56:17

21  Mr. Goodhue say, they're no longer arguing that you're

22  responsible for what anybody else did or for any other

23  infringements that occurred in the same swarm that -- in which

24  you allegedly participated.

25       You understand what I'm saying?                                   11:56:36

1    MR. HARRIS:  I -- yes, I -- I understand.  I've --

2  doesn't make sense to me, but I understand.

3    THE COURT:  Yeah.  And I realize that you may feel

4  like you're striking out for justice more than just your own --

5  in your own cause, but I will tell you, regrettably, that the          11:56:54

6  only case that is before me now, whether or not you believe and

7  whether or not in fact I made mistakes in previous cases, the

8  only case that is before me now is your case, and I will do my

9  best to be fair to both sides.

10    MR. HARRIS:  Okay.  And there's -- okay.  There's          11:57:12

11  quite a few things I could still -- quite a few ducks I could

12  get in a row as well as, you know, as far as still actually

13  being the first one to upload --

14    THE COURT:  Well, let me --

15    MR. HARRIS:  Or -- or, you know, evidence of it.          11:57:28

16    THE COURT:  Yes.

17    MR. HARRIS:  But that was before he owned the

18  copyright, so --

19    THE COURT:  And all of those things --

20    MR. HARRIS:  -- secured the copyright, so I imagine          11:57:36

21  that's okay.

22    THE COURT:  Mr. Harris, all of those things may be

23  relevant to your case, but you're going to have to discover

24  them in a way that they can be admitted in my case.

25    MR. HARRIS:  Well, they are -- they've been admitted          11:57:47

1    in your case, and they were discovered and admitted as -- and

2    cited as documents and findings in other court cases.

3           THE COURT:  All right.  Let me just --

4           MR. HARRIS:  And that -- that's admissible evidence,

5    right?  Findings of other courts?                                      11:58:02

6           THE COURT:  Well, when you said it's complex, it is

7    complex.  Occasionally, rulings by other courts are dispositive

8    of what happens in --

9           MR. HARRIS:  Or --

10          THE COURT:  -- this court.                                       11:58:16

11          MR. HARRIS:  Or evidence that has been submitted in

12   other courts.

13          THE COURT:  Evidence that has been submitted in other

14   courts is not necessarily admissible in this court.  Sometimes

15   judgments are preclusive in this court, but evidence is not            11:58:27

16   necessarily admissible in this court.

17          There are rules of civil procedure, there are rules of

18   evidence, and those govern what is admissible in this court.

19   And simply because something was admitted in another court in

20   another case does not make it admissible in this case.                 11:58:41

21          That doesn't prevent you from being aware of it, and

22   as long as you're being sued by AF Holdings, from requiring

23   them to disclose it to you in a way that will be admissible in

24   this court, and -- but you have to follow the rules.

25          So one of the things that you might want to consider,           11:59:00

1    you might even confer with Mr. Ticen about an appropriate

2    attorney for you to hire if you wish to pursue this case.  It

3    will be beneficial to you.  It's also expensive, I understand

4    that.

5        But you need to understand, and please do so, and    11:59:13

6    we'll talk about your civility in a second, I understand that

7    there's a common Internet phrase calling people "trolls" that

8    do what you believe AF Holdings is doing.  But as I think you

9    understand, I'm not going to let you call AF Holdings and I'm

10   not going to let you call Mr. Goodhue trolls in this court.    11:59:33

11   And nor am I going to let you address me in a tone that isn't

12   respectful.

13       Now, I realize that you may think that's egotistical

14   and unfair, and maybe it is.  But I do promise you that I'm

15   going to try to be as fair to you as I can be, and I'm also    11:59:45

16   going to require that -- and I'm going to try to be as fair to

17   AF Holdings as I can be, but I'm going to require that we deal

18   in these proceedings in a civil manner.

19       Do you understand what I'm saying?

20       MR. HARRIS:  Yeah, I'll -- I'll do my best.    12:00:00

21       THE COURT:  I appreciate it.  I realize that this is a

22   matter that you feel strongly about.  I suspect AF Holdings

23   feels no less strongly.

24       Now, you indicated you wanted to address that, the

25   issue of your civility, and I think you should be allowed to.    12:00:12

1      MR. HARRIS:  I'm going to hold off on it, Your Honor.

2  Because I can make my point as it stands now, as the case

3  stands now.  After the -- the initial claim has been settled

4  and -- and I feel I can address it.

5      As far as getting an attorney, I would -- I would          `12:00:37`

6  really like to have one in this part of the -- I will have one

7  when it comes to the counterclaim, I will have an attorney.

8  I'm sure I'd able to find one --

9      THE COURT:  All right.

10     MR. HARRIS:  -- that will work on a contingency --          `12:00:52`

11     THE COURT:  Well --

12     MR. HARRIS:  -- you know.

13     THE COURT:  -- my advice would be, and I don't know if

14  he's willing to talk to you, but Mr. Ticen has indicated in

15  other pleadings that he's had dealings with Mr. Goodhue in     `12:01:01`

16  other cases.  So I'm not recommending Mr. Ticen to you

17  necessarily, but I suspect that he's someone who might have an

18  idea, if he's willing to talk to you, that could give you the

19  realities of a lawyer and what this case is about, if you

20  haven't understood what I've said, so you can evaluate all     `12:01:18`

21  that.

22     But I would tell you, just because an attorney is

23  familiar with the rules and how things go here, it could be

24  beneficial to you.  That doesn't mean that if you can't hire an

25  attorney that I won't listen to you, because I will.  And I'll  `12:01:31`

1   give you a chance to be heard and participate but you have to

2   follow the rules.  And if you don't follow the rules, then you

3   suffer the consequences.

4         Do you understand what I'm saying?

5         MR. HARRIS:  Yes, there was -- there was one point in       12:01:44

6   these -- in all the motions that I -- I did mention that I was

7   not guilty of this charge, and that -- that motion had been

8   struck.

9         THE COURT:  Well --

10        MR. HARRIS:  I mean, the full -- the whole motion for       12:01:54

11  the lack of civility.  Okay.  There's plenty of motions out

12  there that haven't been filed yet, and --

13        THE COURT:  That's all right.  You have --

14        MR. HARRIS:  I'll work on that.

15        THE COURT:  -- been treated by me throughout as if --       12:02:06

16  with the presumption that you're not yet guilty, because

17  AF Holdings has the burden of proving their case, as you will

18  have the burden of proving any counterclaims.  They haven't yet

19  proved their case.  And so I'm presuming that, you know, I'm

20  presuming, until they demonstrate otherwise, that you're not    12:02:23

21  responsible.

22        MR. HARRIS:  I -- I don't have the computer that I had

23  in the -- the middle of 2011.

24        THE COURT:  Well --

25        MR. HARRIS:  And -- you know, I wish I did.              12:02:39

1           THE COURT:  Well --

2           MR. HARRIS:  It crashed on me.  It was a

3    compound crash.

4           THE COURT:  You know, that's a matter --

5           MR. HARRIS:  Everything went --          12:02:47

6           THE COURT:  -- that's going to be the -- probably the

7    topic of discovery if this case goes forward, and perhaps

8    requests by AF Holdings to draw adverse inferences and other

9    things that I'll consider at the time.

10          But I'll tell you what's going to happen next.  I did   12:03:05

11   notice in the file that you have filed your initial disclosure

12   statement.

13          MR. HARRIS:  Yes, sir.

14          THE COURT:  And I believe -- have you answered the

15   complaint?                                      12:03:13

16          MR. HARRIS:  Have I answered the complaint?  Yes.

17   Yes, sir.

18          THE COURT:  All right.  So what's going to happen now

19   is we're going to set a discovery conference.

20          Have you cooperated with Mr. Goodhue in filing the --   12:03:22

21          Mr. Goodhue, we don't have a discovery schedule here,

22   do we?

23          MR. GOODHUE:  Your Honor, there was a case management

24   order issued.  It did not include the participation of

25   Mr. Harris.                                     12:03:40

1              THE COURT:  I recall that now.

2              Mr. Harris, you didn't participate and so I entered

3    the order as Mr. Goodhue requested.  That has time limits in it

4    in which you conduct what I have referred to as discovery.

5              Discovery is described in the Federal Rules of Civil        12:03:53

6    Procedure.  You can obtain those either on this Court's website

7    as well as the local rules that supplement those rules, or you

8    can find them at your local library.  But those describe what

9    I've told you about depositions, about written questions, about

10   document production requests and other requests.                      12:04:11

11             Mr. Goodhue then is entitled to file them against you,

12   you're entitled to file them against him, during the period set

13   forth in the complaint -- or in the case management order, but

14   you're not allowed to do those after the case management order

15   expires.                                                             12:04:26

16             MR. HARRIS:  Do you know offhand when that expires?

17             THE COURT:  I don't, but it's on the case docket and I

18   filed the pleading.  If you wish, I can run off a copy of the

19   case management order and --

20             MR. HARRIS:  I --                                          12:04:36

21             THE COURT:  -- have it sent out to you.

22             MR. HARRIS:  I've got a cop -- I don't have it with

23   me, but --

24             THE COURT:  If you have a copy you need to read it

25   carefully, because it is an order of this Court, and I do try        12:04:42

```
 1   my very best, and most often succeed, in following my own

 2   orders.

 3            All right?  Is there anything further that you wish to

 4   take up at this time?

 5            MR. HARRIS:  No.                                        12:04:56

 6            THE COURT:  Mr. Goodhue, anything further that you

 7   wish to take up at this time?

 8            MR. GOODHUE:  No.  Thank you, Your Honor.

 9            THE COURT:  All right.  Mr. Ticen, anything else?

10            MR. TICEN:  No, Your Honor.                            12:05:04

11            THE COURT:  All right.  I thank all three of you.

12   Have a nice weekend.

13            MR. GOODHUE:  Oh, excuse me, Your Honor.  You had

14   mentioned a shark 49?

15            THE COURT:  Yes.                                       12:05:13

16            MR. GOODHUE:  Is that what it was called, shark 49?

17            THE COURT:  It's just a screen name that came up in

18   one of the mo -- one of the pleadings filed by Mr. Harris.

19            MR. GOODHUE:  Okay.

20            THE COURT:  Essentially, the pleading in which         12:05:22

21   Mr. Harris suggested that Mr. Steele was uploading the --

22            MR. GOODHUE:  The honeypot.

23            THE COURT:  I'm sorry?

24            MR. GOODHUE:  The honeypot.

25            THE COURT:  Right.                                     12:05:34
```

```
 1              (Off-the-record discussion between the Court and the

 2    clerk.)

 3              THE COURT:  I'm just going to put on the record,

 4    unless you have an objection, Mr. Goodhue, I'm going to print

 5    off a copy of the scheduling order and have a copy given to        12:05:44

 6    Mr. Harris right now.

 7              MR. GOODHUE:  That's fine, or I can provide him one as

 8    well.  Whatever the Court wants to do I'm --

 9              THE COURT:  We'll just provide him a copy now, and

10    that way, the record will reflect that he received a copy of      12:05:54

11    the scheduling order.

12              MR. GOODHUE:  Okay.  Thank you, Your Honor.

13              THE COURT:  Thank you all.

14              MR. TICEN:  Thank you.

15              (Proceedings concluded at 12:06 p.m.)

16

17

18

19

20

21

22

23

24

25
```

1

2                         C E R T I F I C A T E

3

4

5

6

7          I, GARY MOLL, do hereby certify that I am duly

8     appointed and qualified to act as Official Court Reporter for

9     the United States District Court for the District of Arizona.

10         I FURTHER CERTIFY that the foregoing pages constitute

11    a full, true, and accurate transcript of all of that portion of

12    the proceedings contained herein, had in the above-entitled

13    cause on the date specified therein, and that said transcript

14    was prepared under my direction and control.

15

16

17         DATED at Phoenix, Arizona, this 25th day of November,

18    2013.

19

20

21                         s/Gary Moll

22

23

24

25